(121 N. W. 65.)

---

MELVINA MASSEY v. H. C. RAE.

Opinion filed April 6, 1909.

Rehearing denied May 15, 1909.

**Husband and Wife — Conveyance — Validity — Evidence.**

1. There is no presumption that a deed from a wife to her husband is not valid, but upon a showing of mistake, fraud or undue influence through which the husband secures the wife's signature to a deed when she is sick and weak through continued sickness, the burden of showing an adequate consideration, or that no mistake, fraud, or imposition was exercised, is on the husband, and if he fails to show, in view of the relations of confidence existing on account of the marital relation, that no fraud was practiced, and that the deed was understandingly and voluntarily executed, and that the consideration was fair and adequate, the deed will be set aside.

**Deeds — Conveyance by Wife to Husband.**

2. Evidence considered, and *held* to show that a deed from the wife to the husband was executed under circumstances that required the husband to show that no imposition or undue influence was exercised, and that the consideration was adequate, and that the deed was executed understandingly.

**New Trial — Determination and Disposition of Case.**

3. A new trial may be granted in cases tried under section 7229, Rev. Codes 1905, in furtherance of justice, where the action was dismissed on motion at the close of plaintiff's case, and final disposition of the case cannot for that reason be made.

**Husband and Wife — Confidential Relations — Deeds — Evidence.**

4. Relations of confidence will be presumed to exist between husband and wife in the absence of a showing to the contrary. The evidence in this case does not show that no confidential relations existed between the parties.

Appeal from District Court, Cass county; *Pollock, J.*

Action by Melvina Massey against H. C. Rae.  Judgment for defendant and plaintiff appeals.

Reversed and remanded.

*Glassford & Lacy* and *M. A. Hildreth,* for appellant.

A deed obtained by persons in such relations to the grantor as to give them a controlling or strong influence over his conduct, will be set aside upon slight evidence of improper exercise thereof. Casborne v. Barshan, 2 Beaver, 76; Hill on Trustees 156-157-158-159-162; Demp v. Bennett 7 Simons, 539; Story's Equity Jurisprudence, 308-324; Wood v. Downes, 18 Ves. 120; Kleeman v. Peltzer, 22 N. W. Rep. 793.

The burden of proof is upon him taking a gift from one in confidential relations to show the transaction fair and proper.  Sear v. Shafter, 6 N. Y. 268; Houghton v. Houghton, 15 Beaver, 278; Ford v. Harrington, 16 N. Y. 285; Davies v. Davies, Second New Rep. 284; Coutts v. Acworth, Law Rep. 8 Eq., 558-567; Burnaby v. Griffin 3 Ves. 266.

*Barnett & Richardson,* for respondent.

In view of the statutes granting to married women power to convey, no greater burden in the absence of undue influence, rests upon the husband, as to conveyances from the wife than from others.  Tillaux v. Tillaux, 47 Pac. 691; Sheehan v. Sullivan, 58 Pac. 543; Nedby v. Nedby 21, Law J. Ch. 446-5; De. Cox. & S. 377, followed—Barron v. Willis, 68 Law J. Ch. 104 (1899)—2 ch. 578, 81 Law T. (N. S.) 321—48 Wkly Rep. 26.

Morgan, C. J.  This is an action to set aside a deed to a part of lot 1, block 12, of Keeney & Devitt's addition to the city of Fargo. The complaint states as the basis on which such relief is asked the following facts:  That defendant had been acting as the plaintiff's agent in attending to the removal through legal proceedings of a tenant of the plaintiff from a building situated on a lot adjoining the plaintiff's residence.  That the defendant had as such agent served or caused to be served upon such tenant a notice to quit some time previous to May 14, 1906, and that it was necessary to serve another notice, and that defendant did on May 14, 1906, fraudulently procure the plaintiff to sign a deed of the said property and deliver

the same to him through false representations that the paper was a notice to quit to be served upon her tenant to vacate said building. That she signed said deed believing it was a notice to quit, and that she was at the time "in such a condition of illness of body and mind that she had no means and did not know that the instrument she was signing was the deed above set forth, and that she had no knowledge as to her making and delivering said deed until some two or three weeks thereafter, when she was informed that she had deeded the said property to the defendant herein. The complaint also states that no consideration was paid to her for said deed. The answer is a qualified denial, and further alleges affirmatively that the plaintiff is defendant's wife, and that the conveyance was executed and delivered for a valuable consideration, and that the defendant has ever since said conveyanve been in the actual and open possession of the same, and is now the absolute owner thereof. At the close of the plaintiff's case, the trial court granted defendant's motion to dismiss the action, and made findings of fact as follows: That plaintiff and defendant have been husband and wife during the 15 years last past, and have resided in the city of Fargo during that time. That on May 15, 1906, plaintiff, for a valuable consideration, executed and delivered to defendant a quitclaim deed of the premises described, and that said deed was executed freely and voluntarily with full knowledge of the execution and delivery of the same. Judgment was duly entered on these findings, and the action was dismissed. Plaintiff appeals from the judgment and demands a review of the entire evidence under section 7229, Rev. Codes 1905. The record presents a difficult question of fact for determination. The defendant was not a witness at the trial. Hence just what facts he would testify to to substantiate his answer we do not know. He relies solely upon the insufficiency of the plaintiff's evidence to substantiate the cause of action set forth in the complaint. This he had a right to do if the evidence is actually insufficient to show any cause of action in favor of the plaintiff against the defendant.

We will not review the evidence at any great length, but will state enough thereof to indicate the basis of our conclusion that a new trial must be had. In the first place, the evidence of the plaintiff shows to our satisfaction that the defendant paid no consideration for the deed, nor did the plaintiff receive any therefor. The

plaintiff was asked the following questions : "Q. I will ask you wheth-
er or not any money or any consideration ever passed to you from
this defendant or anybody for the deed in question? A. No, sir;
not a dime. Q. Did he ever give you any money at all? A. Never
in his life." The defendant's counsel urge that plaintiff received
the proceeds of a mortgage placed on the lot by the defendant about
one month after the deed was delivered. The evidence fails to
show this fact. An inference of such fact might possibly be drawn
from the evidence. This evidence shows that the plaintiff was in
need of $1,600, and that a mortgage of $800 was placed on the prop-
erty in suit by the defendant, and a mortgage for $800 was placed
on the balance of the lot by the plaintiff. But there is no positive
showing that the plaintiff received all of this money, and we do not
think that the fact of consideration in a case of this kind should be
allowed to rest in inference. The lot in suit is valued at from $3,000
to $4,000, and, if the plaintiff received $800 from the defendant
a month after the deed in suit was given, it is far from showing
that the $800 was a consideration for the deed. During the time
that these mortgages were being negotiated the plaintiff was all the
time endeavoring to procure a reconveyance to her of the property.

So far as the fraudulent representations alleged in the complaint
as a basis for setting aside the deed are concerned, it is conceded
that no such representations are expressly shown by the evidence.
On the trial the plaintiff asked leave to amend the complaint by
striking out all allegations therein as to fraudulent representations,
and inserting in lieu thereof allegations to the effect that the deed
was signed through mistake caused by sickness, and through what
had theretofore transpired as to giving notice to quit to her tenant,
and that, on account of such facts, she believed she was signing a
notice to quit. The motion to amend the complaint was objected
to by the defendant on the ground that the issues would be thereby
entirely changed. The court refused to allow the amendment, and
granted the motion to dismiss the action which had been theretofore
made. In view of this record, it is apparent that the question of
actual fraudulent representations inducing the execution of the deed
must be eliminated in considering the evidence. The deed was signed
in the presence of three persons besides the defendant. The plaintiff
makes no attempt to show any actual fraudulent representations, but
relies upon a claim of mistake as to what she thought she was sign-
ing, which was, as she alleges, brought about by what had transpired

before in regard to serving notices to quit and by her sickness. All the witnesses fully corroborated her testimony to the effect that she was very sick. They all testify that she had to be propped up or held up in bed to sign the deed and the notice. The deputy sheriff who was present to receive the notice to quit for service stated to the notary public who took the acknowledgment as they were leaving the room "that she was pretty sick, and I don't believe she will live long, and I don't think she was understanding what she was doing." A nurse who had attended the plaintiff two or three weeks testified that: "On May 15th she was very ill—she was what I considered in a dying condition, just between life and death." The notary public testified that he realized that she was sick, although he did not know how sick she was, and that he asked her, "Do you know what you are signing?" and that he would not have taken her acknowledgment unless he had asked her that question inasmuch as she had been sick, and that he asked her that question because she was quite sick. This testimony, taken in connection with plaintiff's positive testimony that she has no recollection at all of signing a deed is very convincing that she was in such a condition that she did not as a matter of fact understand what she was signing, and her condition was such that her signature and acknowledgment of the deed are of no weight whatever, and the deed should not be upheld, unless other circumstances show that she was acting with full understanding of the transaction. The plaintiff is a colored woman and the keeper of a house of prostitution, and this fact might lessen the weight of her testimony, or impair it entirely. But the other witnesses corroborate plaintiff's testimony on this question so fully that we think it established that she did not understand what she was signing when she signed the deed. The defendant's attorney endeavored to sustain the deed by showing that the notary asked her if "she knew what she was signing," and that she answered that she did, and said "that it was all right." The plaintiff did not state to the notary that she knew that she was signing a deed, and it seems to be a fact that she was not then and there told what property was included in the deed, and the notary simply testifies that from the best of his recollection he told her that it was a deed, but he does not claim that he told her what it was a deed of. Even if the testimony does show that the notary stated to her that it was a deed this fact would not necessarily mean that she knew or understood, in view of her condition, that it was a deed. The fact that she stated it

was all right, and that she knew what she was signing, has no significance in view of the fact that she thought she was signing a notice only.

Defendant also attempts to sustain the deed on the ground that the plaintiff told the notary that it was all right, and that she was satisfied, about two weeks after the signing and delivery of the deed. From the notary's evidence, however, it is clear that he himself does not know whether she meant to express satisfaction with the notary's services in looking up the records to ascertain what property she had conveyed, or whether she meant to say that she was satisfied with having given the deed to the defendant. It is a significant fact in this case as tending to show that the plaintiff did not know what she was signing that immediately upon ascertaining that the deed conveyed, not all her property, but only a part of the lot on which she resided, she continued to demand that he reconvey to her, and she has ever since insisted upon a reconveyance to her. She ascertained what the deed conveyed in about a week after the conveyance. and from that time until the present time has sought to compel him to reconvey to her. If she knew that she was signing a deed on the 15th of May, and signed it voluntarily in a legal sense, why did she change her mind and demand a reconveyance immediately on being informed that she had given a deed. The only person who can explain this fact, if any one can, is the defendant.

The complaint does not allege that these parties are husband and wife. The answer alleges this as a fact, and the record shows the fact by evidence unobjected to. It is strenuously urged by the defendant's counsel that the confidential relations usually existing between husband and wife did not exist as a matter of fact in this case, and, as a basis for this contention, it is urged that she endeavored to get rid of him. The fact remains, however, that the record shows that they were husband and wife, and lived together in the same house as such. We do not think that there is anything in this record that warrants us in considering the evidence, except according to the general rules applicable to transactions between husband and wife, or other parties between whom exist confidential relations. The fact that married women may convey their separate property without consent from their husbands in this state under section 4079, Rev. Codes 1905, does not abrogate the rule that deeds from wife to husband will be cautiously scrutinized, and, when circumstances

such as appear in this case are shown, a full explanation as to the consideration and circumstances under which the deed was given will be required, and the usual presumptions will not be indulged in thereafter. The case cited (Tillaux v. Tillaux, 115 Cal. 663, 47 Pac. 691) is not in point, as that was a conveyance from husband to wife, and the conveyance was upheld on the ground that it was given in consideration of love and affection. We do not hold in this case that a deed from wife to husband is presumed to be fraudulent, but the husband must show absence of undue influence and the presence of an adequate consideration upon a showing prima facie of undue influence or fraud, or want of adequate consideration, or that the execution of the deed was made while the grantor was not in such a mental or physical state as to understand the nature of the transaction fully. If, for any reason, her deed is shown not to be understandingly given, or the giving of it was induced through imposition or undue influence, it devolves upon the husband to show fully what the circumstances were, and what the consideration was, and that it was fair and just. If the property conveyed by the deed is a gift, it must be shown to have been understandingly and voluntarily given as such. In other words, if there is ground to believe that undue influence was exerted by reason of the marital relations, or that the wife was in such condition that she did not understand what she was doing, the husband must affirmatively show the fairness and adequacy of the consideration, and that no imposition or undue influence was resorted to. In this case the deed recites the consideration as "one dollar and other good and valuable considerations." What these other considerations are is not shown. There is no testimony whatever outside of the deed showing why the deed was given, or what it was given for. The plaintiff expressly repudiates the transaction as one never intended, and the defendant remains silent. Under such circumstances, the defendant should have been called upon to explain the transaction. He prepared the deed the day before, or, at any rate, it was prepared by some one on the day before, and the defendant handed it to the notary just before it and the notice to quit were signed. No word of explanation then or now as to the consideration. As stated by Judge Cooley in Stiles v. Stiles, 14 Mich, 72: "There is no pretense that the conveyance was a gift. The defense rests upon the basis of contract, and a husband who thus abtains his wife's property under

the form of a purchase, and for a consideration merely nominal, would be bound to make clear and satisfactory proof of good faith, or the courts must presume that he has made improper use of his influence as husband to extort the conveyance. On his own showing, the bargain was an unconscionable one; and the ordinary presumptions in favor of the validity of a deed are rebutted by the circumstances." In 21 Cyc. p. 1293, par. 7, this rule is stated: "Equity will scrutinize more closely a conveyance from the wife to the husband than an ordinary conveyance. On account of the confidential relations and supposedly greater influence of the husband, the wife's conveyance may be attended with a presumption against its validity. Upon satisfactory evidence, however, that an adequate consideration was given, and that no coercion or undue influence was used, any presumption of fraud will be removed." Whereas there is no proof of any specific fraudulent representations, there is enough in the record to show that the defendant arranged to have the deed signed while he knew that the plaintiff was very sick and so weak from continued sickness that renders it doubtful at least if she fully understood the transaction. The record does not show who requested the deputy sheriff to be present to receive the notice to quit for service. It appears that plaintiff did not ask him to come to her home that day for that purpose. As the defendant was plaintiff's agent to attend to the removal of her tenant, it is fair to presume that he arranged to have the notary and the deputy sheriff come to the house at the same time. All these facts show that the defendant arranged for the signature of this deed at a time when he must have known that she was not in a condition to fully scrutinize papers or to understand their contents. If it was a mistake, it was caused by the plaintiff's condition, coupled with defendant's conduct. The defendant must have known that the plaintiff was acting under a mistake as to what she was signing. Under such circumstances, fraud may be inferred until the evidence overcomes such inference. If the plaintiff's evidence does not overcome such inference, the burden is on the defendant to show what the consideration is, and that there was no fraud, undue influence, mistake, or imposition. There is no hardship upon the defendant if he is required to tell all the circumstances in connection with this transaction if the same was honest and fair. In this state of the record, we cannot direct a judgment for the plaintiff, and the case cannot be finally disposed of without granting a new trial. The dismissal of the

action at the close of the plaintiff's case was error under the circumstances. Under section 7229, Rev. Codes 1905, this court may grant a new trial in furtherance of justice.

The judgment is therefore reversed, a new trial granted, and the case remanded for further proceeding, according to law. All concur.