## GRACE E. EATLEY, PLAINTIFF-RESPONDENT, v. FRANK A. MEYER, DEFENDANT-APPELLANT.

Submitted October 16, 1931—Decided February 5, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER. and CASE.

For the appellant, *Edward A. Markley* and *Charles W. Broadhurst*.

For the respondent, *John G. Flanigan*.

PER CURIAM.

This is a suit for alleged negligent malpractice, the defendant being a dental surgeon. The substance of the claim is that he negligently diagnosed and treated a case of mouth infection as a fractured jawbone. Plaintiff had a verdict and judgment of $1,200 and defendant appeals.

Of the eleven grounds of appeal assigned, only three are argued, viz., refusal to nonsuit; refusal to direct a verdict for defendant, and refusal to charge the eighteenth request to charge.

The first two grounds can be considered and disposed of together, as both are based on the proposition that there was no evidence of negligence of the defendant.

From the testimony, the jury were entitled to find the following facts:

Plaintiff's teeth needing attention, she went to a young dentist named Bodner, who found a number of teeth in bad order, extracted several, prescribed a mouth wash, and told her to come back the next day. She did come back six days later, and he found she could not open her mouth. Preferring to have the case handled by a more experienced practitioner, he sent her to the defendant, who held himself out as a "dental specialist, X-rays" and testified for plaintiff that he was in fact a specialist and expert in those particulars. He made an examination and diagnosed a broken jaw. He took two X-ray negatives, one of which failed because the patient moved, and the other was criticized by another witness as unsatisfactory because over-exposed; and also insuf-

ficient for its purpose. He wired the teeth and sent the plaintiff home. That night she was in great pain and called in Dr. Introcaso who concluded there was an infection. Over night, plaintiff's condition became decidedly worse, with high temperature. Dr. Introcaso sent for defendant, and at a consultation insisted there was an infection—which defendant denied, and requested that the wires be removed, which defendant refused to do. Dr. Introcaso asked for the X-ray picture and defendant said he would bring it, but did not do so. The temperature continued to rise, there was a large swelling; other physicians were called in and there were more consultations, the condition of the plaintiff growing hourly more serious. After three days of disputations, during which defendant adhered tenaciously to the broken jaw diagnosis, he consented to remove the wires and the subsequent examination disclosed an extensive infection, which cleared up under appropriate treatment. Several X-rays taken by the witness Dr. Bassell showed there was no fracture; and from her testimony it would appear that the X-ray taken by defendant afforded no support for such a diagnosis. Not only this, but the testimony justified a finding that defendant not only wrongly diagnosed and treated but obstinately refused to acknowledge his error and seriously endangered the life of his patient, not to speak of causing her several days of severe suffering. Plaintiff's counsel argues and correctly, as we think, that the defendant as a specialist and claiming to be an expert, was held to a higher degree of care and skill than the ordinary practitioner. *Coleman* v. *Wilson,* 85 *N. J. L.* 203. In this situation it would have been error to take the case from the jury.

Defendant submitted twenty-five requests to charge, and it is to the credit of the trial judge that after receiving this salvo of verbal artillery, he should be complained of on one ground only. The request was as follows:

"18. The plaintiff has testified that between December, 1927, and February, 1928, she was ill with pneumonia; between July, 1928, and August, 1928, she was ill with tonsilitis; in February, 1931, she was ill with bronchitis. I charge

you as a matter of law that the plaintiff cannot recover any damages caused by these diseases as there is no proof that any act of this defendant was the proximate, competent, producing cause of those diseases."

In response to this, the court said:

"The eighteenth request to charge relates to the plaintiff's testimony. The court is not obliged to remember testimony and will deny the eighteenth request for that reason. However, I charge you part of the eighteenth request. I charge you, as a matter of law, that the plaintiff cannot recover any damages caused by these diseases as there is no proof that any act of this defendant was the proximate, competent, producing cause of these diseases.

"You will understand what the court has said in this regard about the aggravation of those latent diseases, if they were latent."

The complaint now is that the defendant was entitled to have the diseases mentioned in the request excluded from consideration as contributing to the damages, and that the omission of the first part of the request made it ineffective in that particular. But the point was fully covered elsewhere in the charge. The jury were several times instructed that the defendant could not be mulcted for anything not the result of his treatment. He pointed out that there might be difficulty in separating results of the treatment from ailments due to other causes. Finally, before the jury retired, the court called for exceptions, and in the course of these occurred the following colloquy with counsel in the presence of the jury:

"Under your main charge, I take exception to that part of your charge in which you instructed the jury as to the claims for headache, vertigo and nervousness; that while your honor could not recollect the facts in the evidence as to this proof, evidence in regard to this claim of permanency, that they could decide if they found from the evidence that there was an aggravation, damages for those claims.

"The court—Here is what the court means and I so charge the jury now, that in regard to pain and suffering, nervousness, dizziness and vertigo, the jury is only to allow, if they

do allow anything, compensation for those ailments which were proximately caused by the unskillful treatment alleged to have been rendered by Dr. Meyer, if any there was. The court has charged the jury that it does not remember that there was any permanent illnesses of that character.

"Mr. Broadhurst—Yes, but I understood from your charge that you permitted them to determine from the evidence, whether they remembered any evidence of that character, and if they did, they could award damages for permanency. My contention is that there was no evidence in the case to warrant the jury——

"The court—The court will so charge the jury that there was no evidence, as the court remembers, on those things, and that being so, they are not to allow for those items."

These instructions were as favorable to defendant as he was entitled to expect, and it is plain from the moderate amount of the verdict, that the jury could have been under no misapprehension of the elements of damage that they were entitled to consider.

We find no harmful error, and the judgment will accordingly be affirmed.