(No. 6854.    April 30, 1941.)

BOISE MOTOR CAR COMPANY, a corporation, Appellant, v. ST. PAUL MERCURY INDEMNITY COMPANY, a corporation, Respondent.

[112 Pac. (2d) 1011.]

James H. Hawley and R. W. Beckwith, for Appellant.

J. F. Martin and J. L. Eberle, for Respondent.

GIVENS, P. J.—Appellant, Boise Motor Car Company, operating a garage and automobile sales agency, purchased, November 5, 1935, from respondent St. Paul Mercury Indemnity Company, a garage liability insurance policy containing these pertinent provisions:

"Saint Paul Mercury Indemnity Company ... does hereby agree....

"(A) To pay all sums which the Assured shall become liable to pay as damages (either direct or consequential) imposed by law for personal bodily injuries (including death at any time resulting therefrom) caused as a result of the work and the operation of automobiles, trailers or tractors, as defined in paragraph (1) and (2) of Insuring Agreement (B).

\* \* \* \* \* \* \*

"(C) To investigate accidents covered by the Policy which come within the meaning of Insuring Agreements (A) and (B) foregoing, to negotiate settlement of claims made on account of such accidents as may be deemed expedient by the Company, *and to defend suits for damages, even if groundless,* brought on account of such accidents in the name and on behalf of the Assured, unless and until the Company shall elect to effect settlement thereof:

"(D) To pay (1) all costs taxed against the Assured in any legal proceeding defended by the Company according to the foregoing paragraph, and interest accruing (on verdict or after judgment) up to the date of payment or tender to the judgment creditor, or his attorney of record, by the Company upon the Company's share of such verdict or judgment rendered in connection therewith, (2) all premium charges on attachment or appeal bonds required in such legal proceedings, (3) all expenses incurred by the Company for investigation, negotiation and defense; and....

\* \* \* \* \* \* \*

"LIMITS OF LIABILITY....

"(2) This policy does not cover the liability of the Assured in respect of bodily injuries or death:

"(a) . . . . . .

"(b) Caused by any automobile operated by any persons under the age limit fixed by law or under the age of sixteen years in any event"; (Emphasis ours.)

July 6, 1936, while this insurance contract was still in full force and effect, one John McAbee came to appellant's place of business and stated he desired to purchase an automobile. Upon inquiry as to his age he told appellant's officers and agents he was eighteen and would be nineteen in a few days; that he was smoking and appeared to have been shaven. In the evening of July 6, one of the salesmen for appellant permitted John McAbee to take the car out alone and while so driving it McAbee collided with one John Heard, a pedestrian. Later investigation revealed McAbee at that time was only fourteen years of age.

September 30, 1936, Heard filed suit against McAbee and appellant herein, alleging negligence of McAbee and that appellant had permitted McAbee to drive the automobile knowing him to be under sixteen years of age. Summons therein was issued the same day and served on appellant November 2, 1936.

No notice of the accident was given respondent until about October 3, 1936. On that day respondent's local attorney wrote appellant (Plaintiff's Exhibit 2) as follows:

"The Saint Paul Mercury Indemnity Company of St. Paul, has just been advised by you that a suit has been filed in the District Court of the Third Judicial District of the State of Idaho, in and for the County of Ada, wherein John Heard is plaintiff and Boise Motor Car Company is the defendant, which said alleged cause of action arises out of an automobile accident occurring on or about July 7, 1936, when a car owned by you and alleged to have been driven by one John McAbee ran into, struck and injured the said John Heard.

"This is the first notice or knowledge that the Saint Paul Mercury Indemnity Company or any of its agents or representatives have had of this accident, and inasmuch as you claim and contend that the Saint Paul Mercury Indemnity Company has insured you by the terms of its policy No. AG 8148, alleged by you to have been issued by its agent on November 1, 1935, you are hereby

advised and notified, that the Saint Paul Mercury Indemnity Company will undertake the investigation of said accident and any and all claims arising as a result thereof, and will defend and represent you in the suit above mentioned or any other arising on account of said accident upon the condition however, that by such action in investigating, defending or representing you in connection with said accident or suit (or in any other manner representing you in connection with said matter) the Saint Paul Mercury Indemnity Company of St. Paul has not and does not, and shall not in any manner waive any of its rights under said policy nor the right to deny liability upon the ground that your failure to notify it promptly upon the occurrence of said accident or to notify it at all.

    \*     \*     \*     \*     \*     \*     \*

"In making the investigation of the facts in connection with the accident or in starting in to defend you in this accident, the company reserves the right to cease its investigation or to cease its defense at any time.

"The purpose of this letter is to bring before you the conditions under which this company will make the investigation and represent you under the said policy in connection with said accident or the subsequent litigation arising out of the same, and to give you the opportunity if you so desire, to employ counsel of your own to represent you in said litigation, or in association with counsel furnished by the company.

> "SAINT PAUL MERCURY INDEMNITY COMPANY
> of St. Paul
> "By J. F. Martin
> Its Attorney."

Plaintiff's Exhibit 3, a letter written by the attorney for respondent to appellant May 11, 1937, concerning the Heard suit, states:

"On October 3, 1936, this company advised you that it was proceeding with the defense of this suit under a full reservation of its rights under the policy and which advice was acknowledged by you on that date. The proceedings have developed to the point where as you know, we have filed an answer in the case for you, and this case

will probably in the normal course of events, be called up for trial within the next month.

"You will observe that Section b. of clause 2 under Declaration 8 of exclusions in this policy, expressly provides that this policy does not cover your liability for any accident caused by any automobile operated by a person under the age of sixteen years.

"This is only one of the reasons why the company is defending you under a reservation and no attempt has been or here is made to enumerate the various causes or reasons for its reservation.

"In view of the fact that this case is being defended by the insurance company under a full reservation of all of its rights and without waiver of any of them under this policy, I want to call your attention again to the fact that you are sued for a sum in excess of ten thousand dollars which is the limit of liability under this policy, and I again on behalf of the insurance company, tender to you the right to associate your own attorney with me in the defense of this case, you however, to pay your own attorney such fee as he shall charge.

"SAINT PAUL MERCURY INDEMNITY COMPANY
of St. Paul,
"By J. F. Martin
Its Attorney."

May 26, 1937, in reply to the above letter of May 11, 1937, appellant wrote (Plaintiff's Exhibit 4):

" *　　*　　*　　*　　*　　*　　*

"Certain questionable reservations were mentioned on Oct. 3, 1936 pertaining to your investigation and defending of this suit.

"Since that time we have been advised by J. F. Martin, your attorney, that in the event judgment is entered against the Boise Motor Car Co. in this suit the Saint Paul Mercury Indemnity Co. will assume no liability under the terms of said policy nor will any appeal be made from any decision of the District Court.

"Such an attitude is not one that could reasonably be expected under the terms of the policy, nor is it one that is conducive to securing the proper legal support. This

is evidenced by the fact that to date we have not received proper legal support in this case.

"We take this means, therefore, of advising you that we are proceeding to secure our own legal counsel for the defense of this suit and will look to you for full and complete compliance of the terms of the policy including all expenses of investigation, incidental expenses, and full attorneys fees.

"Sincerely yours,
"Boise Motor Co.
"By ............................."

May 26 or 27, 1937, appellant employed two attorneys to represent it in the damage suit of John Heard, who co-operated with appellant's attorney in preparation for trial. When the case came on for trial June 16, 1937, on plaintiff's motion therein, and after consent of defendant, it was continued, and October 21, 1937, Heard filed an amended complaint.

January 24, 1938, before the case again came on for trial, respondent's attorney wrote attorneys for appellant that he had discussed possibility of settlement with Heard's attorneys and that they were willing to settle for $2500, and then stated:

" ... I have not asked my company whether they would be willing to contribute anything whatsoever to a settlement of this case. In view of the policy and of the fact that the policy expressly excludes coverage under the conditions such as this, I am inclined to the opinion that they would not contribute very much, if anything.

"It might be interested in contributing what it would consider the costs of defense and again it might be interested in a little more, or as I have stated it might not be interested at all. Frankly, I do not know.

"The thing I want to discuss with you however, is whether or not the Boise Motor Car Company is interested in trying to effect a settlement and if so, how much it is willing to contribute toward a settlement.

"In other words, does the Boise Motor Car Company want to try to effect a settlement of this case and how high will it go to do so. Will you please confer with your

client and let me have the reaction." (Plaintiff's Exhibit 6.)

In reply to this letter, appellant's attorneys reiterated their position that respondent was responsible for the defense of the Heard suit, their reply, January 27, 1938, stating in part:

"The other reason, which lead us to a conclusion that no offer of settlement was indicated in this case was our conviction that the Boise Motor Car Company is adequately protected by the policy of insurance written by the Company you represent. We felt that in the highly unlikely event of a recovery from the Boise Motor Car Company, that the insurance company will be held to furnish full protection. Your letter appears to contain a denial of liability on the part of the insurance company. On the contrary, we feel that the insurance company is fully bound under the policy.

"Of course, if the insurance company takes a serious view of this law suit and its ultimate responsibility, it of course, can make a settlement if it desires, but the Boise Motor Car Company will not participate in any such settlement and will make no contribution towards it." (Plaintiff's Exhibit 7.)

In May, 1938, respondent paid John Heard $400 in settlement of his claim full and complete release was given and his suit was dismissed.

August 20, 1938, appellant demanded the respondent pay attorneys' fees appellant had obligated itself to pay in defense of the Heard suit. By letter of August 30th respondent replied[1] denying liability and this action was

---

[1] Plaintiff's Exhibit 9:

"\* \* \* \* \* \* \* \*

"The Boise Motor Car Company thereafter assented to having its attorneys Beckwith & Hawley associated with Mr. Martin in the defense of the case. It was incumbent upon the Boise Motor Car Company, if it did not consent to the suggested terms set out in the letter of May 11, to refuse the same and take over the litigation on its own behalf. In this it failed. The attorney for the insurance company, Mr. Martin, conducted all the negotiations and settlement of this case was finally concluded by the insurance carrier paying the sum of $400.00 to the plaintiff.

then instituted May 19, 1939, to compel payment of said fees.

This appeal is from judgment of nonsuit granted at the close of plaintiff's case.

The complaint herein sets out the insurance policy haec verba and alleges appellant gave respondent proper notice of the accident but that respondent denied liability and refused to defend plaintiff herein as required by the terms and conditions of the insurance contract; that by reason of such refusal to defend and denial of liability, appellant in order to properly protect itself, hired attorneys to defend the suit noted and has promised and obligated itself to pay said attorneys $1000 therefor; that after proper demand by appellant for reimbursement respondent refuses to pay said sum to appellant, and demands judgment for $1000 and costs against respondent.

Appellant introduced the exhibits above referred to and presented the testimony of officers and agents of appellant to the effect they did not know McAbee was under 16 years of age; that he appeared to be 18 and that he stated 18 years to be his age; testimony of officers of appellant and its attorneys as to the agreement to pay said attorneys $1000 for the defense of the suit, and testimony of appellant's attorneys and two others, as expert witnesses, to the effect the fee agreed upon was reasonable and just.

A motion for nonsuit admits the truth of all facts which the evidence tends to prove and every reasonable inference that can be drawn therefrom. (*Buhl State Bank v. Glander,* 56 Ida. 543, 56 Pac. (2d) 757; *Sweetland v. Oakley State Bank,* 40 Ida. 726, 236 Pac. 538; *Schleiff v. McDonald,* 37 Ida. 423, 216 Pac. 1044; *Bank of Commerce v. Baldwin,* 12 Ida. 202, 85 Pac. 497; *Carver v. Ketchum,*

---

"There is nothing in the picture as we see it, which would justify your present attitude. We therefore must decline any recognition of your demand. We believe that your own attorneys will advise you that we are correct in in our position.

"Yours very Truly,
"SAINT PAUL-MERCURY INDEMNITY COMPANY
(Signed) "A. W. McIntyre
"Supt. of Claims, Pacific Dept."

53 Ida. 595, 26 Pac. (2d) 139; *Manion v. Waybright,* 59 Ida. 643, 86 Pac. (2d) 181; *Allen v. Oregon Short Line R. Co.,* 60 Ida. 267, 90 Pac. (2d) 707; *Evans v. Bannock County,* 59 Ida. 442, 83 Pac. (2d) 427.)

Appellant contends Section 48-903, I. C. A., makes an owner of an automobile liable for the negligence of a driver under the age of 16 only when such owner *knowingly* permits the minor to drive the car; that the exclusion clause of the policy (paragraph 2 (b)) being in conflict with said Section 48-903, is of no force and effect, and that the evidence shows appellant did not knowingly or negligently permit a minor under 16 to drive.

Secondly, it is contended respondent, by its failure to unequivocally assert its right to withdraw from the defense of the Heard suit within a reasonable time after notice of the accident, has waived whatever rights it may have had under the exclusion provision in the policy, and is now estopped to assert such provisions as a defense of this action for breach of its contract to defend.

A decision of the second proposition is determinative of this appeal.

If the company was correct and it was not liable to or for the assured if the car was driven by a person under 16, then only the assured was responsible, and no recovery ever could have been had against the insurance company even though it had failed to defend. Hence the assured, to protect itself on this contingency, had to defend. Of course if the company was liable under the circumstances herein but would not defend, the assured could have let the suit go by default and then recover back from the company up to the coverage of the policy any judgment obtained against it. (*Indemnity Insurance Co. of North America v. Forrest,* 44 Fed. (2d) 465; *Automobile Underwriters Ins. Co. v. Long,* (Tex.) 39 S. W. (2d) 1102.)

The question then is how long could the company remain undetermined and undecided whether it would unequivocally undertake defense of the action, that is, wholeheartedly and fully, in compliance with its contract?

The insurance contract, if of any value, required definite and unequivocal defense, else by continued lack of definite committal the insured might have been tolled

into a cul-de-sac. This continued evasion, therefore, on the face of respondent's own correspondence was, as alleged in the complaint, not a "defense of the suit as required by the policy."

Conceding respondent when first notified of the accident, had a right to investigate and defer determining its acceptance of liability, and in such interim reserve the right to withdraw, by the time of the letter of May 11, 1937, seven months after its first letter announcing its claimed right to withdraw at any time, it had had ample time to decide what its position would be, but did not even then give definite advice of its attitude.

Such right of delayed acceptance of liability is an implied right, because the insurance contract does not expressly so provide. Consequently if there be such right there must be the concomitant implied requirement that after investigation the company give definite assurance that it will or will not defend. Compliance with such requirement is as important and is as much a part of the contract therefore as the actual defense, and not to give such definite assurance is as much noncompliance with the policy as any other element of breach. The company's attitude and contention stated in the last portion of its letter of August 30, 1938 (see footnote 1, *supra*), though adroit and clever would have absolved it from liability at the insured's expense, and incorrectly attempted to place upon the insured the burden of making a choice, since if the insured had entirely taken over the litigation the company might have been freed. The insured at all times though legitimately protecting itself was attempting to compel the company to live up to its contract, which gave it no option to interminably straddle the question of its responsibility.

Numerous cases can be found wherein the right of the insurer to withdraw has been upheld even after judgment, if investigation and defense of the suit was undertaken by the insurer with full reservation established and accepted by the insured before insurer did any act constituting a waiver. However, as pointed out in *Beatty v. Employers Assur. Corporation*, (Vt.) 168 Atl. 919, 924, those cases are distinguishable in that the insured con-

sented by written agreement to the reservation, was held to have acquiesced in such reservation by his actions after notice of such reservation, or no question of waiver or estoppel of the insurer was raised.

Where the insured refuses to enter into an agreement permitting insurer to defend with reservations, and communicates to the insurer a denial of the latter's right to so defend with reservation, as appellant herein did on at least two occasions (Plaintiff's Exhibits 4 and 7, *supra*) and thereafter the insurer fails to withdraw and continues to represent the insured in defense of the suit, the law is clear that the insurer has waived its right to withdraw, and will be estopped to later assert such right when sued by the insured for failure to properly defend. (*Beatty v. Employers' Liability Assur. Corporation, supra; Gerka v. Fidelity & Casualty Co. of N. Y.*, 167 N. E. 169; *Utterback-Gleason Co. v. Standard Accident Ins. Co.*, 184 N. Y. S. 862, affirmed in 135 N. E. 913; *269 Canal St. Corporation v. Zurich General Accident & L. Ins. Co.*, 235 N. Y. S. 63, affirmed in 170 N. E. 159; *Miller v. Union Indemnity Co.*, 204 N. Y. S. 730; *Caiola v. Aetna Life Ins. Co.*, (N. J.) 181 Atl. 524; *National Battery Co. v. Standard Accident Ins. Co.*, (Mo.) 41 S. W. (2d) 599; *Lewis v. Fidelity & Casualty Co. of N. Y.*, (Pa.) 156 Atl. 73.)

Respondent elected to go forward with defense of the Heard suit after having notice appellant would not consent to reservation of respondent's right to withdraw, and its continued assertion of such right of withdrawal thereafter was a breach of its insurance contract and created a hazard, to protect itself from which, appellant was justified in employing attorneys. A fee paid the attorneys is thus properly chargeable against respondent. (Cases *supra,* and *London Guarantee & Accident Co. v. Shafer*, 32 F. Supp. 905; *Sheehee-Ford Wagon & Harness Co. v. Continental Casualty Co.*, (La.) 170 So. 249; *Sears v. Interurban Transp. Co.*, (La.) 125 So. 748; *McKenna v. International Indemnity Co.*, (Wash.) 215 Pac. 66; *Coast Lumber Co. v. Aetna Life Insurance Co.*, 22 Ida. 264, 125 Pac. 185.)

Appellant had thus made a prima facie case and it was error to grant the nonsuit.

The cause is reversed and remanded to deny and set aside the nonsuit and put respondent to its defense if it so desires, otherwise judgment to be entered for appellant. (*Violette v. Ins. Co. of Pennsylvania,* (Wash.) 161 Pac. 343; *Kroetch v. Empire Mill Co.,* 9 Ida. 277, 74 Pac. 868; *Smith v. Clyne,* 15 Ida. 254, 97 Pac. 40; *Alvarado v. DeCelis,* 54 Cal. 588; *Shetler v. Stewart,* (Ia.) 110 N. W. 582; *Massey v. Rae,* (N. D.) 121 N. W. 75; *Gracey v. City of St. Louis,* (Mo.) 111 S. W. 1159; *James v. Jones,* (Ky.) 127 S. W. 795; *Engineer Co. v. Herring-Hall-Marvin Safe Co.,* 138 N. Y. S. 881.)

Costs awarded to appellant.

Morgan and Holden, JJ., concur.

Budge, C. J., and Ailshie, J., deeming themselves disqualified, did not sit at the hearing and took no part in this opinion.