82 N.J. Super. 323 (1964)
197 A.2d 591
PIETRO LoROCCO, ET AL., PLAINTIFFS-APPELLANTS,
v.
N.J. MANUFACTURERS INDEMNITY INSURANCE CO., ETC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1964.
Decided February 13, 1964.
*325 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Joseph G. Barbieri argued the cause for appellants (Messrs. Barbieri & Esposito, attorneys; Mr. Barbieri, of counsel).
Mr. James I. Bowers argued the cause for respondent (Messrs. Bowers, Rinehart & Murphy, attorneys; Mr. Bowers, of counsel).
The opinion of the court was delivered by KILKENNY, J.A.D.
Plaintiffs instituted a declaratory judgment action in the Chancery Division and sought thereby an adjudication that defendant insurance company must pay, *326 in addition to $3,700 in compensatory damages already paid by it, $9,500 in punitive damages awarded by a jury in the Law Division in their favor and against James Viswat, whom the insurance company had defended in the Law Division suit. The Chancery Division denied the relief requested by plaintiffs, dismissed their complaint and entered judgment in favor of defendant insurance company. Plaintiffs have appealed from that adverse determination.
On May 10, 1960 plaintiff Pietro LoRocco was injured and the automobile of his wife, Rosalie, was damaged when a vehicle, owned by Viswat Dairy, Inc. and operated by James Viswat, was driven into the rear of plaintiffs' automobile. Plaintiffs sued the corporate dairy and James Viswat, individually, charging additionally in their negligence complaint that the operator of the dairy's vehicle had acted in a "deliberate, wanton and reckless manner." There was no demand for punitive damages, as such, in the complaint.
Defendant insurance company undertook the defense of the action, since it had issued its liability policy insuring Viswat Dairy, Inc. and any other person using this vehicle with the permission of the insured. The complaint alleged that James Viswat was acting as agent of Viswat Dairy, Inc. at the time of the collision.
No specific claim of punitive damages was asserted by plaintiffs in any pretrial discovery proceeding or in the pretrial order. Paragraph 1 of the pretrial order, in which R.R. 4:29-1(b)(1) requires to be set forth a concise descriptive statement of the nature of the action, referred to the suit as "Automobile negligence action, personal injury and property damage." Paragraph 5, wherein the rule requires a statement of "all claims as to damages," stated only, "As set forth in answers to interrogatories." These answers, in turn, referred only to the usual loss of salary, hospital and medical bills, and the like. The issues were expressed in paragraph 7 of the pretrial order as: "Negligence, contributory negligence, damages, agency." Thus, the pretrial order in the Law Division, which serves the purpose, inter alia, of stating and *327 simplifying the issues to be litigated, classified the suit as a "negligence" action only and did not manifest in any clear manner that punitive damages were being sought. While "damages" was stated generally as an issue, punitive damages are not recoverable in mere negligence suits. Eatley v. Mayer, 9 N.J. Misc. 918, 919, 154 A. 10 (Cir. Ct. 1931), affirmed 10 N.J. Misc. 219, 158 A. 411 (Sup. Ct. 1932); 15 Am. Jur. § 281, p. 721.
In his opening statement at the trial, plaintiffs' attorney told the jury that on the occasion in issue James Viswat had driven the dairy company's vehicle into the rear of the LoRocco car. He then said,
"Now, a complaint filed in this action states that Mr. Viswat was negligent and that this negligence was wilful, it was wanton, he struck him in the rear not once, but three times." (Italics ours)
He then described the injuries sustained by Mr. LoRocco and the consequential hospital and medical care, loss of pay and expenses incurred. Though the claim was reasserted that "young Mr. Viswat was negligent, he struck this car in the rear" and that "he did this in a wanton manner," there was no reference to any right to or claim for punitive damages. Instead, plaintiffs' attorney talked only of the theory of the law "that if you have a justifiable complaint, the object of the law is to make you whole again." Such is the theory of compensatory damages.
During the presentation of their case, plaintiffs offered evidence tending to prove that defendant James Viswat had intentionally rammed the rear of their vehicle several times. Plaintiffs rested their case on the second day of the trial. When court resumed on the following morning, plaintiffs' attorney, on his own volition, moved, out of the presence of the jury, to amend paragraph 7 of the pretrial order in which the issues were specified as negligence, contributory negligence, damages and agency, "to set forth specifically exemplary or punitive damages as one of the issues in this case."
*328 Counsel for the insurance company acting for defendants objected on the grounds that the motion came too late and that the complaint was one for negligence, containing the customary allegations thereof, despite the additional language noted above. He also claimed surprise. The trial court granted the motion to amend the pretrial order to specify a claim for punitive damages, noting the allegation of "wanton" conduct in the complaint and expressing the opinion that the amendment, though not absolutely necessary, would clarify the issues.
We are informed that counsel for the insurance company thereupon orally notified the insured and James Viswat that the company would not be liable for punitive damages, if they were recovered, and that he was withdrawing from the defense of that claim to allow the insured and James Viswat to obtain counsel to defend them with reference thereto. Thereupon, the insured's president, William Viswat, and the driver, James Viswat, asked counsel for the insurance company to go ahead with the defense and stated that they would take their chances with regard to the punitive damages, so long as the insurance company would pay any compensatory damages which the jury awarded. With that understanding, counsel for the insurance company continued with the defense of the case.
At the close of all the evidence a motion was made for a dismissal as to Viswat Dairy, Inc., on the ground that the proofs established that James Viswat was not acting as its agent at the time of the happening. The motion was granted. The case was submitted to the jury only as to James Viswat, individually.
The jury awarded plaintiff Pietro LoRocco $3,500 compensatory damages and $8,500 punitive damages. It awarded plaintiff Rosalie LoRocco $200 compensatory damages and $1,000 punitive damages. James Viswat, by his own separate attorney, thereafter applied for a new trial as to the award of punitive damages. His motion was denied. Defendant insurance company, as noted above, paid the compensatory damages, *329 but refused to pay the punitive damages. Plaintiffs' declaratory judgment action followed and was dismissed by the Chancery Division. We now consider the five points advanced by plaintiffs for reversal of this judgment.

I.
Plaintiffs contend that defendant insurance company "pursued a path that amounted to a conflict of interests" and should, therefore, be required to make payment of the punitive damage awards.
This point is without merit. In its general context, the complaint charged negligence and the pretrial order gave the suit the label of an "automobile negligence action." Under the terms of its policy, the insurance company was obliged to defend its insured and any other person operating the insured vehicle with permission of the insured against such a charge, regardless of any other allegations by plaintiffs.
The complaint was duplicitous in character since it embodied in a single count two separate causes of action, one for negligence and another for intentional wrongdoing. Negligence excludes design. It is a failure to use that degree of care which a man of ordinary prudence would have used under similar circumstances. When plaintiffs not only asserted negligence in their complaint, but also charged that James Viswat had operated the dairy's vehicle "in such a deliberate, wanton and reckless manner * * * so as to cause his vehicle to collide and crash into the rear of plaintiff's vehicle," they charged the separate tort of trespass. As to the resulting personal injuries, plaintiffs were maintaining that an assault and battery had been committed by James Viswat. See Farm Bureau Mut. Automobile Ins. Co. v. Hammer, 177 F.2d 793, 796 (4 Cir. 1949).
Plaintiffs' duplicitous pleading placed defendant insurance company in an equivocal position. It was duty-bound to defend its insured and the driver as to the claims based on negligence. *330 As to the alleged assault and battery, it could have properly refused to represent the alleged tortfeasor. Its policy expressly excepted coverage in the case of an assault and battery "committed by or at the direction of an insured." This is the conflict of interest referred to by plaintiffs. They argue that the course of action employed by the insurance carrier "of controlling the entire case" and then refusing to make payment "is contrary to the philosophy expressed in Merchants Indemnity Corporation v. Eggleston, 37 N.J. 114 (1962)."
The insurance company controlled the entire case up until plaintiffs rested at the trial, because it believed, as it had a right to believe under the circumstances herein, that it was representing the defendants in a negligence suit and was duty-bound to represent them under the terms of the policy. When the ambiguous pretrial order was amended after plaintiffs had completed presentation of their evidence, to clarify the issues and to manifest expressly for the first time that plaintiffs were also seeking punitive damages, the insurance company immediately objected to the amendment, pleaded surprise, disclaimed any responsibility for punitive damages, notified the insured and its driver that it would not defend them against such a claim and was withdrawing from that phase of the case, so that they might engage separate counsel to represent them, and then continued the defense upon the express understanding, noted above, that it would be answerable only for compensatory damages. Continuing to represent defendants under those circumstances did not make the insurance company liable to pay the punitive damages. The Eggleston case, upon which plaintiffs rely, is not apposite, as a reading of the differentiating facts therein will amply disclose. Here, the insured consented to avail themselves of the benefit of continued legal representation by the insurer subject to the agreed upon reservation. "An insurance carrier may, in a proper manner, disclaim liability and defend the action brought against its insured." Weller v. Atlantic Casualty Ins. Co., 128 N.J.L. 414 (Sup. Ct. 1942). The insured *331 having by acquiescence accepted defense by the insurance company, with full knowledge of its disclaimer, the carrier may defend an action by a third party upon the policy, and if it appears that there is no coverage, there can be no recovery. Zisko v. Travelers Insurance Co., 117 N.J.L. 366, 369 (E. & A. 1937).

II.
Plaintiffs' second contention, that they were not required to plead punitive damages specifically in the complaint, is correct. Eatley v. Mayer, supra, 9 N.J. Misc., at p. 919. It is also true that "where a defendant has been guilty of a malicious wrong, punitive damages may be recovered." Kuzma v. Millinery Workers, etc., Local No. 24, 27 N.J. Super. 579, 593 (App. Div. 1953). But these rules do not support any conclusion that defendant insurance company must pay punitive damages assessed against James Viswat, individually.
The verdict's inclusion of an award for punitive damages bespeaks a finding by the jury that the additionally insured, James Viswat, had committed an assault and battery. The insurance company might have contended that this brought the case within the exclusion from coverage provision of the policy, noted above. However, it asserted no such claim but paid the compensatory damages, as it had agreed, when it consented to continue the defense with that understanding.

III.
Plaintiffs argue that the disclaimer by the insurance company as to the claim for punitive damages was not timely. The Chancery Division found that the carrier had disclaimed in a timely fashion under the circumstances of this case. We agree with that finding.

*332 IV.
The Chancery Division rested its decision on the further ground that the law does not obligate an insurance carrier to pay damages arising out of an intentional wrong, as here, and that the rule of estoppel does not apply in transactions forbidden by public policy. It concluded that "it is against public policy to insure against intentional wrongs committed by a party, as was done in this case."
Plaintiffs maintain that the payment of punitive damages under the circumstances of this case would not be against public policy. They place reliance upon Ohio Casualty Insurance Company v. Welfare Finance Co., 75 F.2d 58 (8 Cir. 1934); Northwestern National Casualty Company v. McNulty, 307 F.2d 432, 442 (5 Cir. 1962), and Malanga v. Manufacturers Casualty Insurance Co., 28 N.J. 220 (1958).
These cases do not support plaintiffs' position herein. Our Supreme Court noted in Malanga,
"The reason the insurance policy denies coverage of an assault and battery committed by or at the direction of an insured is that it would be contrary to public policy to indemnify a person for a loss incurred as a result of his own willful wrongdoing. 7 Appleman, Insurance Law and Practice, § 242 b (1942)." (28 N.J., at p. 225.)
At the same time, the court noted, ibid.:
"But the public policy which lies behind the exclusory clause is not applicable where liability is imposed upon an insured for an assault and battery in which he himself took no part."
The federal cases, supra, make this same distinction between the actual tortfeasor and one only vicariously liable, denying coverage to the former and extending it to the latter.
In the instant case, the complaint was dismissed as to the named insured, Viswat Dairy, Inc., upon proofs showing an absence of agency. Thus, there was no party vicariously liable. The judgment was against the "willful wrongdoer" only and, as pointed out in Malanga, "it would be contrary to public policy" to indemnify him.

*333 V.
Plaintiffs' final point is that "the issue of public policy, if any, is contravened by the acts of the insurance carrier in this particular case whereby they are estopped from relying upon any such defense." They argue that the carrier's complete control of the case precluded James Viswat from attempting to negotiate his own settlement or taking such acts as would be deemed to be in his own best interests by his own personal counsel. On that premise, they reach the conclusion that the insurance carrier "should be estopped from asserting any defense based upon public policy."
The basic weakness in this argument is that the assumed premise lacks factual support in the record. When the claim for punitive damages was made manifest at the trial, James Viswat was then told that the insurance company would not defend him with respect to that claim and that he should select his own personal counsel. He was not precluded from obtaining his own attorney. He voluntarily chose to rely upon the services of the insurance company's attorney and, with full knowledge of the carrier's position, willingly assumed the risk of punitive damages, with the understanding that the insurance company would be answerable only for compensatory damages. This freedom to pick his own attorney as to the punitive damage phase of the case is further demonstrated by his actual selection of personal counsel in his motion for a new trial.
Finding no sound basis for a reversal in any of the points advanced by plaintiffs, the judgment is affirmed.