(No. 7034. December 19, 1942.)

ANDREW I. ROLLEFSON, Respondent, v. LUTHERAN BROTHERHOOD, Appellant.

[132 Pac. (2d) 758.]

Rehearing denied January 25, 1943.

J. F. Martin for appellant.

Laurence E. Huff for respondent.

HOLDEN, J.—December 11, 1925, appellant, Lutheran Brotherhood, a Minnesota corporation, issued to respondent its certificate of life and total and permanent disability insurance, the pertinent provisions of which follow:

"TOTAL AND PERMANENT DISABILITY BENEFIT

"The LUTHERAN BROTHERHOOD, upon receipt of due proof that the insured, prior to the maturity of this certificate, and before attaining the age of sixty years, has become wholly disabled by bodily injury or disease occurring and originating while this agreement is in force, so that he is and will be permanently and totally unable to perform any work or engage in any occupation whatever for remuneration or profit, and that such disability has existed for not less than three consecutive months from receipt of such proof:

1. Will waive the regular payments thereafter coming due under said certificate during such disability; and
2. Will pay the insured, or other person designated by or in behalf of the insured, an annuity in the sum of fifty dollars per month, from receipt of such proof, during the lifetime and continued disability of the insured."

\* \* \* \*

"Altho proof of such disability has been accepted as satisfactory, the insured may at any time, not oftener than once a year, be required to furnish due proof of the continuance of such disability, and no such annuity will be

paid or payment waived for any time during which permanent and total disability is not established as provided herein."

October 6, 1932, respondent suffered a cerebral hemorrhage. January 13, 1933, he submitted proof in support of a claim for permanent and total disability. Appellant paid respondent disability benefits for about seven years, to-wit, from April 28, 1933, to and including February 6, 1940. April 11, 1941, appellant having refused to pay any further disability benefits or to waive further payment of premiums, respondent commenced this action against appellant in the District Court for Latah County, Idaho, alleging as follows: the corporate existence of appellant; that he resided in Latah County; that December 11, 1925, appellant made, executed and delivered to respondent its certificate of life and total and permanent disability insurance in writing, and attached a copy of the certificate to his complaint; that said "life insurance certificate is in the amount of $5,000.00 and the premium for said life insurance certificate and total and permanent disability benefit is $41.80 quarterly"; that the "premiums for said certificate of life insurance and total and permanent disability were paid by plaintiff in full up to January 11, 1933, and the premiums thereon were waived by defendant in accordance with the provisions of said total and permanent disability benefit from January 11, 1933 until March 11, 1940"; that "premiums were paid under protest by the plaintiff quarterly in the amount of $41.80 on March 11, 1940, June 11, 1940, September 11, 1940, December 11, 1940, and March 11, 1941 in the total amount of $209.00"; "that on October 6, 1932, plaintiff suffered disability as follows, to-wit: A cerebral hemorrhage causing paralysis of right side of body, accompanied by general arterosclerosis with hypertension"; that January 13, 1933, plaintiff submitted proof of total and permanent disability to defendant in accordance with the terms and conditions of said permanent and total disability benefit; and again on April 28, 1933, plaintiff submitted additional proof to defendant of such total and permanent disability, and on August 9, 1933, defendant allowed plaintiff's claim for permanent and total disability, effective as of January 6, 1933; that defendant paid plaintiff a monthly disability annuity in the amount specified in said total and permanent disability benefit from January 6, 1933 to and including January 6, 1940; "that the pay-

ment on January 6, 1940 paid the disability annuity to February 6, 1940"; "that the plaintiff has furnished to the defendant proof of the continuance of his total and permanent disability in accordance with paragraph 8 of said total and permanent disability benefit at all times required by the defendant"; "that plaintiff furnished to the defendant his regular annual proof of the continuance of total and permanent disability at the request of defendant on August 2, 1939 and defendant thereafter continued the total and permanent disability annuity payments to the plaintiff until February 6, 1940 and the defendant has not since that time required the plaintiff to furnish any further proof of the continuance of plaintiff's total and permanent disability."

May 2, 1941, appellant interposed a general demurrer to the complaint, but the record fails to show that the trial court ever passed on the demurrer. June 23, 1941, appellant filed an answer to the complaint in which it admitted its corporate existence; that it had refused to pay respondent any further total and permanent disability annuity benefits or to waive any further payment of premiums; that December 11, 1925, it made, executed and delivered to respondent its certificate of life and permanent and total disability insurance; that October 6, 1932, plaintiff "suffered a cerebral hemorrhage and this defendant paid disability benefits to the plaintiff from April 26, 1933, to and including February 26, 1940"; and denied "each and every allegation, statement and fact contained in plaintiff's complaint except" as so admitted.

The case was tried by the court, sitting without a jury, commencing February 19, 1942. At the threshold of the trial, before any testimony was adduced, appellant made the following objection:

"We object to the introduction of any evidence upon the ground and for the reason the complaint does not state any fact or facts sufficient to constitute a cause of action against this defendant, and that there is no material triable issue set out in the pleadings."

"THE COURT: The objection is overruled. These matters, of course, will all be considered."

Immediately after the making of said objection, when respondent was on the witness stand under direct examination, the following questions were asked and the following colloquy occurred:

"Q. I will ask you to state whether or not you furnished the defendant with proof of the continuance of your disability at all times required and at the request of the defendant in October, 1933, and May, 1939?

"MR. MARTIN: I object to that as calling for a conclusion of the witness, self-serving, and that it is immaterial under any possible theory of this case. There is no controversy whatsoever existing about what he did between 1932 and 1939.

"THE COURT: Of course, if that is admitted by the pleadings, Mr. Huff—

"MR. HUFF: I think it is admitted. If it is admitted here, it is perfectly all right. I felt that it was admitted by inference. I want to make sure there is no doubt about it.

"THE COURT: The objection, I think in order to be consistent, will have to be overruled. I don't want you to assume something is admitted here that is not. I don't know just what this answer does provide.

"MR. HUFF: An admission by inference.

"MR. MARTIN: There are no inferences to be indulged in. We admit, Your Honor, that we paid this gentleman disability benefits up to February 6, 1940. Now, whatever may have transpired prior to or during any time that we were paying disability to this plaintiff or any condition precedent to our paying disability benefits is immaterial as we view the matter and not at issue in this case in the least.

"THE COURT: In other words, you admit the disability payments were made.

"MR. MARTIN: That is right. Yes.

"THE COURT: And that covers the particular period of time that his question involved. I think that would constitute an admission of the defense. Proceed.

"MR. HUFF: My thought is, there is no controversy existing—

"THE COURT: Where a thing is not controverted at all, no proof of it is necessary.

"MR. HUFF: If it is understood it is not controverted in the court's mind—

"THE COURT: The question of these proofs during the period of time that you mentioned there is not in controversy at all.

"Q. I will ask you, Mr. Rollefson, if you at any time refused the defendant the opportunity to examine your person between 1933 and March 21, 1940?

"MR. MARTIN: We object to that upon the ground and for the same reason that it is immaterial, that there is no issue or controversy existing over anything that was done between 1932 and February, 1940."

At the close of all the evidence appellant moved for judgment of nonsuit, which motion the court denied. March 31, 1942, Findings of Fact and Conclusions of Law were made and filed, and on the same day judgment was entered thereon in favor of respondent and against appellant. April 10, 1942, appellant gave notice of intention to move for a new trial and on the same day moved for a new trial. April 11, 1942, the motion was heard and denied. April 27, 1942, the defendant corporation appealed from the judgment, as well as from the order denying its motion for a new trial.

Appellant argues that respondent nowhere alleged in his complaint he was ever totally or permanently disabled by injury or disease and that respondent's "position seems to be that appellant, having paid him disability benefits for a period of time, must continue to pay ad infinitum. It is apparent therefore that two fundamental objections are involved on this appeal, going to the sufficiency of the complaint to state a cause of action and to the sufficiency of the proof introduced on respondent's behalf. The questions are: (1) Under the terms of the policy upon whom did the burden of proof rest on the trial? and (2) Was it incumbent upon the respondent, as plaintiff to plead and thereafter prove that he was totally and permanently disabled by 'bodily injury or disease occurring and originating while this agreement is in force' as required by the policy?"

The second question will be discussed first. As we understand appellant, it is now insisting it was necessary for respondent to plead and prove he was originally, to-wit, October 6, 1932, permanently and totally disabled and that such disability continued from that date on. In the trial court, however, appellant appears to have taken a contrary position insofar as the necessity for pleading and proving respondent suffered total and permanent disability October

6, 1932, is concerned. In the trial court, when the question arose as to what the issues were, appellant stated there was "no controversy whatsoever existing about what he [referring to respondent] did between 1932 and 1939"; that "whatever may have transpired prior to or during any time that we [appellant] were paying disability to this plaintiff [respondent] *or any condition precedent to our paying disability benefits is immaterial* as we view the matter *and not at issue in this case in the least*"; and further "that there is no issue or controversy existing over anything that was done between 1932 and February, 1940." [Emphasis ours.]

What conditions precedent to the payment of disability benefits did appellant thus give the trial court to understand were "immaterial" and "not at issue in the case in the least"? Tersely stated, they are: receipt by appellant of due proof (prior to the maturity of the certificate and before the policyholder reached the age of 60 years) that the insured had "become wholly disabled by bodily injury or disease", "so that he is and will be permanently and totally unable to perform any work or engage in any occupation whatever for remuneration or profit, and that such disability has existed for not less than three consecutive months". These conditions precedent cover every essential element of respondent's right, originally, to the payment of disability benefits, and these are the conditions which appellant gave the trial court to understand were "not at issue in this case in the least." Nevertheless, appellant apparently now insists respondent is not entitled to recover in that he did not allege and prove he was originally totally and permanently disabled. Having given the trial court to understand there was no controversy concerning "any condition precedent to our paying disability benefits", which, of course, would necessarily include "due proof" that respondent had actually suffered total and permanent disability, and the trial court having acted upon that understanding, and the case having been tried upon that theory, appellant will not now be heard to contend the contrary. For a party will be held to the theory upon which the cause was tried in the lower court and a different and inconsistent theory cannot be advanced for the first time on appeal. [*Gibbs v. Claar*, 58 Ida. 510, 519, 75 P. (2d) 721; *Aetna Cas. & Sur. Co. v. Wedgwood*, 57 Ida. 682, 687, 69 P. (2d) 128; *French v. Tebben*, 53 Ida. 701, 27 P. (2d) 474; *Idaho Gold Dredging Corp. v. Boise Payette L. Co.*, 52 Ida. 766,

776, 22 P. (2d) 147; *Milner v. Earl Fruit Co.*, 40 Ida. 339, 349, 232 Pac. 581; *Brown v. Hardin*, 31 Ida. 112, 169 Pac. 293; *McDaniel v. Moore*, 19 Ida. 43, 112 Pac. 317; *Estate of McVay*, 14 Ida. 56, 62, 93 Pac. 28.)

That brings us to the consideration of appellant's contention the burden of proof was upon respondent to prove the continuance of his disability. It insists *Murphy v. Mutual Life Ins. Co. of New York* (Ida., 1941), 112 P. (2d) 993, 999, supports that contention. The following are the pertinent provisions of the contract of insurance involved and construed in that case:

"Section 3.

"Total Disability.—Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the insured to follow a gainful occupation.

"Permanent Disability.—Total disability shall, during its continuance, be presumed to be permanent;

"(a) If such disability is result of conditions which render it reasonably certain that such disability will continue during the remaining life time of the insured; or,

"(b) If such disability has existed continuously for ninety days.

"Benefits.
* * * * *

"(b) Waiver of Premium.—The company will also, after receipt of such due proof, waive payment of each permium as it thereafter becomes due during such disability."

Thereafter, it appears Murphy "paid the annual premiums on said policy until December 25, 1929, when he applied for disability benefits and cessation of premium payments because assertedly suffering from arthritis. He thereupon received disability payments covering from December 25, 1929, to and including September, 1930. Payments were then discontinued during the months of October and November 1930 and resumed again upon further application by appellant from December, 1930, to and including May 27, 1939, when the last payment was made and thereafter again discontinued."

It also appears that "August 14, 1939, respondent [Mutual Life Ins. Co. of New York] wrote appellant's attorney stating it considered appellant no longer disabled and that

no payments would be made for periods subsequent to May 27, 1939, until further investigation was concluded. Following resultant correspondence and controversy over respondent's desire to have appellant go to Salt Lake City for examination, this suit was filed August 28, 1939, to recover disability payments for the months of June, July, and August, 1939."

It will be noticed the insurance contract in the Murphy case did not contain the following:

"Altho proof of such disability has been accepted as satisfactory, the insured may at any time, not oftener than once a year, be required to furnish due proof of the continuance of such disability, and no such annuity will be paid or payment waived for any time during which permanent and total disability is not established as provided herein."

Hence, the question was not presented, and it may be added, was not even raised, in the Murphy case as to whether, under the terms of an insurance contract like those above-quoted, the insurer must, before refusing to pay further benefits, require the insured "to furnish due proof" of the continuance of his disability. It is clear, therefore, the Murphy case does not support appellant's contention.

Whether the judgment against appellant should be affirmed or reversed depends upon the construction of the particular insurance contract involved in the case at bar. This court pointed out in *Rauert v. Loyal Protective Ins. Co.*, 61 Ida. 677, 685, 106 P. (2d) 1015, "It is a matter of common knowledge that insurance contracts are not entered into as other contracts generally are." And as was well said in *Browning v. Equitable Life Assur. Soc.* (Utah, 1937), 72 P. (2d) 1060, 1073, approved in *Rauert v. Loyal Protective Ins. Co.*, supra:

"Insurance policies, while in the nature of written contracts, are not prepared after negotiations between the parties, to embrace the terms at which the parties have arrived in their negotiations. They are prepared beforehand by the insurer, and the company solicitors then sell the insurance idea to the applicant. Normally, the details and provisions of the policy are not discussed, except that the particular form of policy is best suited to give the applicant the protection he seeks. If he reads the policy

he is generally not in a position to understand its details, terms, and meaning except that, in the event against which he seeks insurance, the company will pay the stipulated sums. He seldom sees the policy until it has been issued and is delivered to him. He signs an application blank in which the policy sought is described either by form number or by a general designation, pays his premium, and in due course thereafter receives, either from the agent or through the mails, his policy. Many of its terms and all of its defenses and super-refinements he has never heard of and would not understand them if he read them. Such fact is evident from the fact that cases like this arise where lawyers and courts disagree as to what such provisions mean. In fact, there are about as many different constructions by the courts of terms such as those involved here as there are insurance companies issuing such policies. For this reason the rule of *strictissimi juris* has been applied almost universally to insurance contracts, and this jurisdiction, like many others, has declared in favor of a liberal construction in favor of the insured to accomplish the purpose for which the insurance was taken out and for which the premium was paid."

In *Rauert v. Loyal Protective Ins. Co.*, supra., it was further pointed out:

"This court, like the Utah Supreme Court (*Browning v. Equitable Life Assur. Soc.*, supra), is committed to the rule of liberal construction of insurance policies. In *Sweaney & Smith Co. v. St. Paul etc. Ins. Co.*, 35 Ida. 303, 315, 316, 206 Pac. 178, we held that a 'clause in an insurance policy being susceptible of more than one construction, the one most favorable to the insured will be adopted (citing cases). Contracts of insurance should be considered in view of their general objects and the conditions prescribed by the insurers, rather than on the basis of a strict *technical interpretation*' (emphasis ours). The rule of liberal construction was later adhered to in *Sant v. Continental Life Ins. Co.*, 49 Ida. 691, 291 Pac. 1072; *Maryland Casualty Co. v. Boise Street Car Co.*, 52 Ida. 133, 11 P. (2d) 1090; *Watkins v. Federal Life Ins. Co.*, 54 Ida. 174, 29 P. (2d) 1007; *Kingsford v. Business Men's Assur. Co.*, 57 Ida. 727, 68 P. (2d) 58."

The policy of insurance issued to respondent is the handiwork of appellant. By its own policy it agreed to pay respondent a monthly annuity "upon receipt of due proof

that the insured * * * has become wholly disabled", which proof, it is admitted was furnished to and accepted by appellant. This policy further provided that "although proof of such disability has been accepted as satisfactory, the insured may at any time, *not oftener than once a year, be required to furnish due proof of the continuance of such disability*" (emphasis ours). Assuming, but not conceding, the insurance contract in question here is susceptible to more than one construction, for instance, the construction contended for by appellant, we are, as above stated, committed to the rule the one most favorable to the insured must be adopted. The most favorable construction under the terms of this policy is that appellant contracted in substance: first, that upon receipt of due proof the insured had become wholly and permanently disabled, it would pay him an annuity of $50 per month. Secondly, that it would continue to make such payments at least until it required respondent "to furnish due proof of the continuance of such disability", which proof, however, would not be required "oftener than once a year".

In the case at bar appellant did not require respondent to furnish proof of the continuance of his disability for the year in which it refused to pay him further benefits.

It follows from what has been said the judgment must be affirmed, and it is so ordered, with costs to respondent.

Givens, C.J. and Ailshie, JJ. and Featherstone, D.J., concur.

BUDGE, J. (Concurring in the conclusion reached).—

In my opinion, the complaint states a cause of action. Sec. 5-807, I. C. A. Under the allegations in the complaint, and the stipulations in the contract, appellant having admitted a compliance with all of the conditions precedent contained in the contract by respondent, the burden of proof was cast upon appellant to allege, and by a preponderance of evidence, establish that respondent no longer suffered permanent and total disability, in order to relieve itself from the monthly payments, as stipulated in the contract. This point being properly raised in appellant's brief by assignment of error and argued in the briefs of counsel, has not, to my mind, been decisively determined in the majority opinion. (*Wold v. State Mutual Life Assur. Co.,* 270 N. W. 150; *Hess v. Equitable Life A. Society,* 83 Pa. Sup. Ct. 146 (1924).

If I am correct in announcing the above and foregoing rule, it follows that the appellant's answer failed to state facts sufficient to constitute a defense to respondent's cause of action, as alleged in the complaint. The judgment as entered should be sustained.