447 P.2d 14

**L. E. STEPHENS, Plaintiff-Respondent,**

**v.**

**NEW HAMPSHIRE INSURANCE COMPANY, a corporation, Defendant-Appellant.**

**No. 10168.**

Supreme Court of Idaho.

Nov. 1, 1968.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for appellant.

Holden, Holden & Kidwell, Idaho Falls, for respondent.

SMITH, Chief Justice.

Respondent (plaintiff) brought this action for recovery of damages to his potato cellar, the damages having been caused by an alleged windstorm; such damages were covered by a policy of insurance issued by appellant (defendant). The policy afforded coverage for "loss by windstorm." Appellant resisted recovery on the ground that the loss was the proximate result of structural deficiency in the potato cellar, not caused by the wind on the day in question.

Respondent's potato cellar is located on his property some 15 miles northeast of Pocatello, Idaho. It was built by respondent, and insured by appellant, during the year 1961. It was an "A" construction type cellar, oriented in a north-south direction, approximately 360 feet long and 40 feet wide. The roof had rafters or trusses in the form of an "A," with vertical supports throughout the length of the structure. Rough lumber sheeting was nailed to the rafters diagonally at about a 45 degree angle for about 100 feet on the north end and about 100 feet on the south end; the sheeting was applied horizontally over about 160 feet in the middle portion of the structure.

Although no architect had been employed, the testimony of the contractor who built this and other cellars of the same type, and of an expert witness, was that architects are not normally consulted for the construction of potato cellars. Their testimony indicates that respondent's particular type of cellar was of standard construction as regards plans, materials and workmanship. The testimony also shows that similar cellars had collapsed, with no reasons given therefor.

During the morning of January 8, 1966, several minutes after the doors of the cellar were opened, the middle portion of the roof collapsed. Appellant contended that this was due to the improper use of the horizontal sheeting on that interior portion of the roof, and not as a result of wind in the area.

There is no wind recording station in the immediate area of the cellar, the nearest one being the station situate at or near Pocatello. On that day the Pocatello station recorded the strongest gust of wind at 36 miles per hour. Experts testified that winds of that velocity occurred several times a year, but that wind velocities could vary considerably even at distances of only five miles. Testimony of those at the site of the cellar indicated that a strong

and gusty wind was blowing on January 8, 1966. Testimony also indicated that opening the doors at one end of the cellar could increase the wind force on the cellar by one and one-half times.

Respondent's expert witness, Mr. Mc-Masters, testified that the pitch of the roof and type of sheeting used were of standard construction for potato cellars of the type here involved, and that in his opinion the fall of the roof was due to the gusty wind blowing on January 8, 1966.

Appellant's expert witness, a civil engineer, testified that in his opinion the roof collapsed due to the faulty construction, particularly as regards the use of green lumber and horizontal sheeting in the construction of the part of the cellar which collapsed. However, prior to the date of collapse (5 years after the insurance became effective) appellant had never inspected the cellar, although it had an inspector stationed in Salt Lake City, Utah.

Appellant, at the close of respondent's case, moved for an involuntary dismissal, which motion the trial court denied. Following verdict for respondent, the court denied appellant's motion for judgment notwithstanding the verdict. The court thereupon entered judgment on the verdict in favor of respondent and against appellant in the total sum of $10,833.57. Appellant perfected an appeal from the judgment and from the order denying motion for a judgment notwithstanding the verdict or for a new trial.

■ Appellant, by its assignments of error, questions whether the trial court correctly instructed the jury (Instruction No. 9) as to the definition of the term "windstorm," within the purview of appellant's policy of insurance,[1] inasmuch as the policy does not define the term. Such instruction reads as follows:

### "INSTRUCTION NO. 9

"You are instructed that any wind that is of such extraordinary force and violence as to thereby injuriously disturb the ordinary condition of the things insured, is tumultuous in character, and is to be deemed a windstorm within the purview of the policy of insurance, in absence of a provision therein to the contrary."

The principal issue appellant raises is whether there was sufficient evidence adduced to establish that at the time of the cellar's collapse, there was a "windstorm" within the meaning of that term, as applied to casualty insurance coverage. To determine this issue it is necessary first to decide what constitutes a "windstorm" for insurance purposes. Appellant contends that windstorm insurance provides coverage only if the premises are in a reasonable state of repair.

The question presented appears to be one of first impression in this state. It thus becomes necessary to consult the decisional law of other jurisdictions in the premises. The Supreme Court of Alabama decided this question in Great American Insurance Co. v. Railroad Furniture Salvage of Mobile, Inc., 276 Ala. 394, 162 So.2d 488 (1964). That decision, well supported by decisional law of other states, contains the following:

"[W]here there are no limiting terms, 'windstorm' in a policy of insurance has been defined by other courts in general as being a wind of such tumultuous force and sufficient velocity as to proximately cause injury to the insured's property. Albert Lea Ice & Fuel Co. v. United States Fire Ins. Co., 239 Minn. 198, 58 N.W.2d 614; Adams Apple Products Corp. v. National Union Fire Ins. Co., 170 Pa.Super. 269, 85 A.2d 702; Fidelity-Phenix Fire Ins. Co. v. Board of Education of Town of Rosedale, 201 Okl. 250, 204 P.2d 982; Lunn v. Indiana Lumbermen's Mut. Ins. Co., 184 Tenn. 584, 201 S.W.2d 978, 171 A.L.R. 259; Fireman's Ins. Co. of Newark, N. J. v. Weatherman (Tex.Civ.App.), 193 S.W.2d

---

1. The policy provides inter alia "The coverage of this policy is extended to include direct loss by windstorm."

247; Roach-Strayhan-Holland Post No. 20, etc. v. Continental Ins. Co., 237 La. 973, 112 So.2d 680; Travelers Indem. Co. v. Wilkes County, 102 Ga.App. 362, 116 S.E.2d 314; Metropolitan Ice Cream Co. v. Union Mut. Fire Ins. Co., (Mo.App.) 210 S.W.2d 700; Gerhard v. Travelers Fire Ins. Co., 246 Wis. 625, 18 N.W.2d 336.

"As stated by the Wisconsin court in the Gerhard case, supra:

'Any other view would work an imposition upon the insured. If defendant wishes to adopt some scale which establishes the velocity of wind necessary for a windstorm, or if it desires to limit its liability beyond the point that we have indicated, it should incorporate its proposed standard in the policy by clear terms and such ambiguities as are left in this policy should be resolved against it.'

"In rejecting the 'reasonable state of repair' condition included in the definition of windstorm coverage, the Supreme Court of Mississippi, in New Hampshire Fire Ins. Co. v. Kochton Plywood & Veneer Co., 242 Miss. 169, 134 So.2d 735, pointed out that the insurer:

'* * * had the right to examine these buildings before they wrote the insurance and accepted the premium on the policies, and if they had examined the buildings and found they were not substantial they could have declined to write the insurance and have avoided the consequences of this loss.'

"We conclude that the concept of 'windstorm' as expressed in the opinions of a majority of the courts of our sister states, which omit the element of the structural condition of the insured building, to be the sounder view, and adhere to it."

It will be observed that the Alabama Court rejected the so-called "reasonable state of repair" theory as advanced by appellant herein, such rejection again being well supported by the decisional law of other jurisdictions.

■ In the absence of a clause in the insurance policy limiting coverage to those structures in a reasonable state of repair, there is no such implied condition in appellant's insurance policy purporting to modify "direct loss from windstorm." This holding is further supported by the general rule that where a clause in an insurance policy is susceptible to more than one construction, the one most favorable to the insured will be adopted. Scharbach v. Continental Casualty Company, 83 Idaho 589, 366 P.2d 826 (1961); Rollefson v. Lutheran Brotherhood, 64 Idaho 331, 132 P.2d 758 (1942); Rauert v. Loyal Protective Ins. Co., 61 Idaho 677, 106 P.2d 1015 (1940); Sweaney & Smith Co. v. St. Paul Fire & Marine Ins. Co., 35 Idaho 303, 206 P. 178 (1922).

■ In view of such interpretation of "windstorm," the only remaining question is whether the evidence is sufficient to support respondent's theory of the case, that a windstorm caused the cellar to collapse, or whether the collapse was occasioned by structural weakness. The testimony at trial indicated that on January 8, 1966, a substantial wind was blowing. The expert testimony as to the cause of the collapse is conflicting—one expert testifying that the intensity of the wind caused the collapse; another, that structural deficiencies of the cellar may have caused the collapse. This court has consistently held that findings of the trier of facts supported by substantial, competent, though conflicting evidence will not be disturbed on appeal. Riley v. Larson, 91 Idaho 831, 432 P.2d 775 (1967); Formont v. Kircher, 91 Idaho 290, 420 P.2d 661 (1966); Huppert v. Wolford, 91 Idaho 249, 420 P.2d 11 (1966).

■ Appellant, in raising the question of the sufficiency of the evidence to support the verdict and judgment, contends that the opinion of respondent's expert witness, Mr. McMasters, as to the cause of the collapse of the cellar, did not include sufficient facts to support his opinion.

Mr. McMasters is an agricultural engineer employed by the University of Idaho

Agricultural Experimental Station at Aberdeen, Idaho. He had had specialized study in potato storage, had conducted a survey of many potato cellars in the area, and was co-author of an Idaho Experiment Station Bulletin entitled "Potato Cellar Construction and Management."

Mr. McMasters testified that he observed respondent's potato cellar on January 28, 1966. He was asked to go to the cellar "to see if we could determine why it collapsed." He observed the type of construction of the cellar, including the sheeting on the interior of the structure. After testifying in detail concerning the manner and type of construction, he stated that the cellar was of standard construction and that "generally the workmanship and the appearance of the materials appeared to be good. * * * they [the materials] were as good as any standard that we have for construction of potato cellars, * * * the workmanship appeared to be good, * * *."

Mr. McMasters further testified that the use of horizontal sheeting such as was used in the center section of the cellar, is standard construction.[2] Mr. Gene Miles, respondent's expert witness, admitted that he differed with McMasters only as to the sheeting, he having testified that "the building with the exception of the sheeting was quite well planned and quite well constructed."

Mr. Stewart, respondent's witness, is a research meteorologist stationed about 45 miles west of Idaho Falls. He had inspected the recorded measured wind flows at recording stations in southeastern Idaho. He described the weather conditions in the entire area and then testified, "Generally to summarize, the whole pattern reported, consistently at all of the stations, the winds were * * * we call 'generally strong and gusty' coming from the south to southeast. * * * the winds continued in the same general character." He then stated

that in the particular area of appellant's cellar at the time of its collapse, "the steady wind speed would be from fifteen up with the low twenty miles per hour, and there would have been some gustiness—this was characteristic of the whole area, and these gusts should have ranged in the—miles per hour from thirty to forty." This he observed essentially in all reporting stations, with peak wind gusts in the area where he was stationed up to forty-one miles per hour. In the Pocatello area, about the time the cellar collapsed wind velocities were recorded with gusts up to thirty-seven miles per hour.

Returning to the testimony of respondent's expert witness, Mr. McMasters stated he heard the testimony of meteorologist, particularly as to gusts of wind in the area between thirty and forty miles per hour. In answer to a hypothetical question, seeking his opinion as to the effect of such wind condition on the potato cellar, after technical explanations, he expressed his opinion that "the cellar collapsed due to external forces, and these external forces were caused by the wind that was blowing that day."

We therefore hold that Mr. McMasters' opinion as to the cause of the collapse of the structure is factually and sufficiently supported by the evidence.

Respondent submits that appellant's failure timely to renew his motion for a directed verdict at the close of all the evidence, precluded this court from reviewing the sufficiency of evidence to sustain the verdict and judgment, citing Christensen v. Stuchlik, 91 Idaho 504, 427 P.2d 278 (1967) and I.R.C.P. 50(b).

After Christensen v. Stuchlik was decided (May 4, 1967), Rule 50(b) was amended by this Court, effective September 12, 1968, to provide, inter alia, that "The failure of a party to move for a directed verdict, for a judgment notwithstanding the verdict or for a new trial shall not preclude appellate

---

2. It is implicit in the record that the sheeting, installed in the end 100-foot sections of the potato cellar, was deemed by appellant to be of standard workmanlike construction.

review of the sufficiency of the evidence when proper assignment is made in the appellate court."

Should this court be precluded from reviewing the sufficiency of the evidence to support the verdict and judgment, such would automatically result in an affirmance of the verdict and judgment which is in respondent's favor; likewise the review of the evidence has the same result; hence respondent is not prejudiced by rejection of his contention on this issue.

Respondent has duly filed herein his motion for allowance of attorneys' fees on appeal. I.C. § 41–1839 (formerly I.C. § 41–1403; Molstead v. Reliance National Life Insurance Co., 83 Idaho 458, 364 P.2d 883 [1961]). Respondent is hereby allowed the sum of $1,000.00 attorneys' fees on this appeal, such sum to be added to the judgment on remittitur of this cause.

Judgment affirmed. Costs to respondent.

TAYLOR, McQUADE, McFADDEN and SPEAR, JJ., concur.