526 P.2d 854

ASSOCIATES DISCOUNT CORPORATION
OF IDAHO, dba Associates Financial
Services, Inc., Plaintiff-Appellant,

v.

YOSEMITE INSURANCE COMPANY,
Defendant-Respondent.

No. 11006.

Supreme Court of Idaho.

Nov. 28, 1973.

On Petition for Rehearing April 17, 1974.

Mark B. Clark, Pocatello, for plaintiff-appellant.

Ben Peterson, D. James Manning, Pocatello, for defendant-respondent.

BAKES, Justice.

On August 21, 1969, appellant Associates Discount Corporation purchased from respondent Yosemite Insurance Company, a vendor's single interest insurance policy. The policy was purchased to protect the security interest of Associates in a 1969 Chevrolet Camaro which had been purchased by Ted Jockumsen, Jr., and which was financed by Associates. Associates paid an annual premium of $145.00 for the policy. After the retail purchaser Jockumsen made three payments on the car he defaulted on his contract with Associates, and as a result, on November 12, 1969, Associates repossessed the car and placed it on the sales lot of Intermountain Chevrolet in Pocatello, Idaho, for the purpose of obtaining a purchaser for it. On about February 1, 1970, the car was stolen from the Intermountain Chevrolet lot and was taken to Power County where it was completely dismantled, stripped and carried away except for the frame. Appellant furnished respondent with notice of the loss as required by the terms of the policy and made demand upon respondent for payment covering the loss. There is no question but that the policy was in effect at the time of the loss. However, respondent denied cov-

erage claiming that the policy only covered damage or loss to the automobile while it was in the possession of the retail purchaser and prior to repossession by the insured, Associates. The trial court found in favor of the insurer, Yosemite, and appellant Associates has appealed that finding.

The question involved in this appeal is what did the insured, Associates, buy with the $145.00 premium? Appellant Associates maintains that it bought coverage for its security interest in the automobile from the time that the retail purchaser took possession until its security interest terminated in a foreclosure sale. Yosemite, on the other hand, maintains that the insurance only covered the security interest of Associates while the vehicle was in the possession of the retail purchaser.

Ordinarily one would expect to find the answer to this question in the insurance policy itself. However, an examination of the policy provides no ready answer to the question, but rather gives one the distinct impression that the policy was drafted by a committee. Counsel for the parties has not cited any cases directly in point involving this type of vendor's single interest insurance policy, and our independent research has not disclosed any. The issue involved here appears to be unique.

The relevant provisions of the policy are as follows:

"INSURING AGREEMENTS

"1. Definition of Coverages

A. Fire, Lightning or Transportation —* * *

B. Theft—To cover the interest of the insured, only, in the automobile insured hereunder, against direct and accidental loss of or damage to the automobile caused by theft of the entire automobile.

C. Collision or Upset—To cover the interest of the insured, only, in the automobile insured hereunder against direct or accidental loss of or damage to the automobile, caused by a single collision of the automobile with anoth-er object or by upset of the automobile or by collision with a vehicle to which it is attached *while the automobile is in the lawful possession of a retail purchaser under a bailment lease, conditional sales contract, mortgage or other encumbrance.* (Emphasis added).

"2. Premium

The premium charged hereunder for each automobile is subject to a $15.00 minimum charge to be retained in full by the Company. The premium in excess of the minimum charge shall be refunded in accordance with the pro-rata table applicable to Single Interest Coverage except that (a) cancellation may be allowed within thirty (30) days of the effective date of Coverage at a minimum earned premium charge of Ten ($10) dollars and (b) in event loss is paid under this policy, the premium for the year in which the loss occurs and all prior years is fully earned.

"3. Conditions Precedent to Liability

The conditions precedent to the attaching of the Company's liability for any loss or damage under this policy are:

(a) That the retail purchaser has defaulted in payments; and

(b) That the insured has repossessed the automobile.

"4. Insured's Duty When Loss Occurs

When the insured shall be advised of damage to the automobile insured hereunder which may result in an impairment of his interest therein, the insured shall, as soon as practicable, give notice of such occurrence to the Company or its authorized agent. The insured shall protect the automobile whether or not the loss is covered by this policy and any further loss due to the failure of the insured to protect shall not be recoverable under this policy.

"5. Date of Loss

The Company's liability shall attach as of the date when the Company receives notice from the Named Insured that all

the conditions precedent to a claim hereunder have been complied with, and such date shall, for the purpose of this policy, be the date of loss.

"6. Company's Liability—Settlement Options

\* \* \* \* \* \*

"7. Policy Period, Territory, Purposes of Use

This policy applies only to direct and accidental losses to the automobile which are sustained during the policy period, while the automobile is within the United States of America, its territories or possessions, Canada, or is being transported between ports thereof, and is owned, maintained and used for the purposes stated as applicable thereto in the declarations." (Clerk's Transcript).

Appellant points out that under definition 1(C), Collision or Upset, the damage must occur while the automobile is in the lawful possession of a retail purchaser, but that under 1(B), the theft provision, that limitation is omitted. Therefore appellant argues that theft loss, even though after repossession and not while the vehicle is in the lawful possession of the retail purchaser, is nevertheless covered under the policy. Looking at those two definitions, this argument is plausible.

Respondent on the other hand contends that looking at the other provisions in the policy, and reading them *"in pari materia"* shows that the policy fixes the date of loss as of the date of repossession, and if at that time no loss has occurred, there is no further liability of the respondent insurer under the policy. This argument appears to fly directly into the face of the language of paragraph 3, Conditions Precedent to Liability. Paragraph 3(b) specifically requires that the vehicle be repossessed as a condition precedent to the attaching of the company's liability for any loss or damage under the policy. Respondent argues that it is the time of repossession which fixes the date of loss, and if the vehicle is damaged at the time it is repossessed, then it is that damage for which

the insurance was issued. However, paragraph 5 of the policy does not support this argument. Further, if respondent's interpretation is accepted, there could be no theft coverage under any circumstances where the vehicle was stolen from a retail purchaser and was not recovered, since under those circumstances it would be impossible to repossess a vehicle as required under the express language of subparagraph 3(b). In order to avoid this anomalous result, respondent Yosemite requests that we interpret, which is another way of saying rewrite, section 3(b) of the policy to read "that the insured has repossessed [or attempted to repossess] the automobile," thereby providing coverage in the event of the theft of the car while the retail purchaser is still in possession. We respectfully decline the invitation to rewrite the policy for respondent. The policy must be interpreted as written. Our long standing rule of construction is that an ambiguous contract is to be "construed most strongly against the person preparing it or employing the words concerning which doubt arises." Big Butte Ranch, Inc., v. Grasmick, 91 Idaho 6, 415 P.2d 48 (1966); Morgan v. Firestone Tire and Rubber Co., 68 Idaho 506, 201 P.2d 976 (1948). This rule is applicable to insurance contracts. Stephens v. New Hampshire Ins. Co., 92 Idaho 537, 447 P.2d 14 (1968).

Under section 1(B) the theft coverage is not limited to theft occurring while the automobile is in the lawful possession of a retail purchaser, such as the collision coverage is expressly limited in paragraph 1(C). Since the condition precedent to liability, i. e., default by the retail purchaser and repossession have occurred, and since the insured has notified the company of the loss, we are of the opinion that the loss in question was covered under the policy.

The cause is remanded to the trial court to enter judgment in favor of appellant under the policy and for reasonable attorneys fees as prayed in plaintiff-appellant's complaint. I.C. § 41–1839.

Costs to appellant.

DONALDSON, C. J., and SHEPARD and McQUADE, JJ., concur.

McFADDEN, Justice (dissenting).

In my opinion the judgment of the trial court should be affirmed for the reasons set forth below.

The majority opinion as written seeks the best of all possible worlds for the appellant here. That opinion first states that the contract must be interpreted as written, then holds that an ambiguous contract must be construed most strongly against the person preparing it, and by claiming an ambiguity in the policy, then arriving at the conclusion that the loss involved here was covered by the policy.

In its approach to the problem, the majority opinion quoted at length from the second page of the policy which sets forth the insuring agreements but failed to mention the first page of the policy which contains the declarations by the insured which declarations are made a part of the policy by express terms. Contracts of insurance must be read and considered as a whole, and the meaning and intention of the parties determined therefrom. *Watkins v. Federal Life Ins. Co.*, 54 Idaho 174, 29 P. 2d 1007 (1934). In *Parma Seed, Inc. v. General Ins. Co. of America*, 94 Idaho 658, 662, 496 P.2d 281, 285 (1972), this court stated:

> "To ascertain that intent [the intent of the parties to the insurance policy], it is well settled that this Court must look first to the contract itself, construing the document as a whole."

Contracts of insurance should be considered in view of their general objects rather than on the basis of the strict technical interpretation. *Maryland Cas. Co. v. Boise Street Car Co.*, 52 Idaho 133, 11 P.2d 1090 (1932); *Rollefson v. Lutheran Brotherhood*, 64 Idaho 331, 132 P.2d 758 (1942).

In my opinion, examination of the declarations of the insured contained in the policy,[1] five in number, when considered in connection with the remainder of the policy require an affirmance of the district court judgment. In summary these declarations state: Item 1, that appellant is the insured; Item 2, the purchaser of the automobile is Ted Jockumsen, Jr., and the policy period is for one year, August 21, 1969 to August 21, 1970; Item 3, the premium of $145.00 is computed at $15.00 for coverage for fire, lightning and transportation and theft, and $130.00 for coverage for collision or upset; Item 4, the automobile is described as a 1969 Chevrolet Camaro Sport Coupe, on which there remains an unpaid balance of $4,152.75, payable in 36 monthly installments. The insured warrants:

> "That the motor vehicle described above was delivered to a bona fide retail purchaser under a legally enforceable conditional sale contract, chattel mortgage or lien. The unpaid balance of the contract, mortgage, or lien is as shown herein."

Finally,

> "Item 5. The purposes for which the motor vehicle is to be used are business and pleasure unless otherwise stated herein. There are no payments on this account more than 30 days past due."

On this first page of the contract is set out a table for the pro-rata cancellation of this policy.

The purpose for a Vendors Single Interest Policy has been expressed as follows:

"SINGLE INTEREST COVERAGES

Dealers, Finance Companies
and Loan Companies

"The general practice of automobile dealers and finance companies, in financing the purchase of an automobile, is to require that the borrower supply

---

1. This policy is entitled "Vendors Single Interest Policy" and contains in bold face type the admonition "we direct your attention to the fact that coverage under this policy protects the interest of the lienholder only and does not protect the interest on equity of the purchaser."

Fire and Theft or Comprehensive coverage plus Collision. However, when older automobiles are purchased, or when older autos are pledged as security for small loans, the requirement that the borrower supply Collision insurance is often waived as impractical because of the sparse market for coverage on such cars.

"  *   *   *

"Conversion and Single Interest Collision insurance are available to protect automobile dealers and finance companies against these losses. These coverages insure only the interest of the dealer or finance company, *never that of the purchaser of the automobile.*

Coverage

"*Single Interest Collision* insurance (which is often written where the purchaser is not required to carry Collision insurance) covers the *interest of the insured finance company or dealer* against loss due to collision. *There is no protection for the owner of the car.* Following the accident, if the owner repairs the car and continues to make his payments, there is no claim under Single Interest Collision coverage. But if, following collision damage, he ceases to make payments and the value of the repossessed property is insufficient to pay the balance owed upon it, then the insurance company must make good the loss *to the insured* (dealer or finance company) due to collision.  *   *   *." Fire, Casualty and Surety Bulletins of the Nat'l Underwriters Service (Cs–1) (12th printing, July 1967).

In Connecticut Bank and Trust Co. v. Zering, 2 Conn.Cir. 333, 199 A.2d 18, 19, (1963), that court pointed out:

"A contract of insurance covering single interest damage hazards, while similar to an automobile physical damage policy containing comprehensive or fire and collision coverage, differs in that it covers only the lender's interest after damage and default."

Property and Liability Insurance, Magee and Serbein, 4th ed., 1967, a text on insurance, in Chapter 19, discusses automobile insurance contracts. Therein it is stated at page 479:

"For the purposes of insurance, automobiles are classed as (1) private passenger, (2) commercial, (3) public, (4) garage, and (5) miscellaneous.

"Private passenger automobiles include motor vehicles of the private passenger type, unaltered, and station wagons and jeeps used for pleasure or business purposes. In this category are included motor vehicles of the private passenger type even though altered by the attachment of a small box and used to transport tools or materials or to carry samples but not used for wholesale or retail delivery. Regardless of the type of the car, motor vehicles used for renting, livery work, or carrying passengers for compensation do not fall in the private passenger category, *nor do motor vehicles owned and held for sale or used* for demonstrating purposes by a dealer or manufacturer." (Emphasis added.)

In discussing the various types of policies available, the authors discuss "Single Interest Collision and Conversion Insurance," "Single Interest Fire and Theft," and "Dealers' Damage Insurance," which in my opinion points out the fallacy of the reasoning of the majority opinion in arriving at the conclusion the judgment here should be reversed. The authors state:

"Single Interest Collision and Conversion Insurance. This is a form of insurance made available to dealers and finance companies to protect them against loss occasioned by the hazards incident to financed automobiles. Not all cars carry comprehensive or collision insurance, and a financed car seriously damaged by collision might deplete the security of the finance company and might possibly result in a situation in which collection of the amount due is impossible.

"Single interest collision insurance protects the interest of the insured finance company or automobile dealer only. In the event of an accident, the owner of the automobile is expected to make the necessary repairs, and if he does this, there is no liability on the part of the insurer writing the single interest collision insurance. If, following a collision damage to a financed car, the purchaser of the car fails to make necessary repairs and discontinues making his payments under the terms of the sales contract, the insurer is obligated to repair the collision damage or make good to the insured the loss occasioned by the collision." [Id. p. 503.]

" * * *.

"Single Interest Fire and Theft. While it is usual in connection with the financing of the purchase of automobiles for the party providing the funds to require the purchaser of the car to insure it for fire and theft and have the contract endorsed to cover the interest of the mortgagee, there are, nevertheless, situations in which a single interest fire and theft contract meets a need. Automobile dealers and finance companies in the chattel loan business that advance money with automobiles as security frequently find the single interest fire and theft contract advantageous. The contract provides a cover similar to that afforded by the single interest collision contract but limited to the risks of fire and theft, * * *.

"Dealers' Direct Damage Insurance. Direct damage insurance for automobile dealers is written under several forms each adapted to meet a particular need. * * *.

"The various contracts cover automobiles owned by the dealer and held for sale or used in repair service. The insurance does not extend to automobiles sold under a conditional sale, mortgage, or other similar agreement." Id. p. 504.

This policy was purchased for the purpose of protecting the appellant in its security interest in the car while it was in the possession of and being used by the purchaser Ted Jockumsen, Jr. As long as the contract was being complied with by the purchaser, and payments being made, whether the vehicle was stolen or damaged, the insurance company would not be liable if the payments under the purchase contract were being made. No liability attached to the respondent insurance company until there had been damage to the vehicle or theft [2] of it, and then only if the conditions precedent to liability as contained in the policy are met, i. e., the purchaser is in default and the appellant has repossessed the vehicle.

The policy imposes a duty on the insured in case of damage in the following terms:

"When the *insured shall be advised* of damage to the automobile insured hereunder which may result in an impairment of his interest therein, the insured shall, as soon as practicable, give notice of such occurrence to the Company or its authorized agent. The insured *shall protect the automobile* whether or not the loss is covered by this policy and *any further loss due to the failure of the insured to protect shall not be recoverable under this policy."* (Emphasis added.)

The foregoing provision indicates that only when a loss is sustained while the vehicle is in possession of the purchaser is there policy coverage. Otherwise why does it require that the insured first be advised of damage before giving notice to the company? In addition, after the insured receives possession of the vehicle, failure to protect the vehicle from "any further loss" is not covered by the policy.

While the vehicle was still in the possession of the car buyer the appellant was se-

2. Little credence is given the argument that the vehicle could not be repossessed if stolen from the purchaser and hence there would be no insurance coverage. Demand for delivery of the vehicle would have sufficed to establish the rights as between the parties, for the law does not require the doing of an useless act.

cured in the amount of the balance due under the installment contract by the value of the vehicle. But, after default and repossession, the appellant's status insofar as its security interest is concerned, was completely changed. Having possession of the very subject of the contract, appellant no longer was relying upon its lien, but was relying upon the vehicle itself for its security.

The duty imposed upon the appellant to "protect the automobile whether or not the loss is covered by this policy" contemplates coverage under the policy only for loss or damage while it is in the possession of the purchaser, and imposes on appellant the duty to protect the vehicle after the loss has been incurred and appellant has repossessed it.

It is my opinion the trial court was correct in its conclusion:

"That the insuring agreement * * * provides coverage only for a loss occurring while the insured vehicle is in the prior possession or control of the retail purchaser and prior to repossession of said vehicle by the named insured."

## ON PETITION FOR REHEARING

BAKER, Justice.

The Court granted respondent's petition for rehearing on the sole issue of attorney fees. Respondent, relying upon Carter v. Cascade Insurance Co., 92 Idaho 136, 438 P.2d 566 (1968), argues that since there was a question concerning whether coverage was actually afforded in this case, that attorney fees should not have been allowed.

I.C. § 41–1839 provides in pertinent part:

"41–1839. Allowance of attorney fees in suits against insurers.—(1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.

"(2) In any such action, if it is alleged that before the commencement thereof, a tender of the full amount justly due was made to the person entitled thereto, and such amount is thereupon deposited in the court, and if the allegation is found to be true, or if it is determined in such action that no amount is justly due, then no such attorney's fees may be recovered."

In Halliday v. Farmers Insurance Exchange, 89 Idaho 293, 404 P.2d 634 (1965), in considering the coverage of I.C. § 41–1839 in the context of an insurance company's refusal to pay a specified claim under an uninsured motorist statute, this Court stated at page 301, 404 P.2d at page 639:

"An attorney fee is authorized by the statute for refusal or failure to comply with terms of a policy of insurance. Not being a penalty, such attorney fee is an additional sum rendered as compensation subsequent to a determination that the respondent is entitled to recover pursuant to the provisions of his policy."

The Court also stated:

"The material issue is 'Who prevails?' If the insured prevails, then that party is entitled to reasonable attorney fees." 89 Idaho at 301, 404 P.2d at 638.

The Carter case relied upon by respondent involved an insured motorist whose automobile was struck by an automobile driven by an uninsured motorist. The insured sent a proof of claim to the insurer but did not mention a specific sum as acceptable in satisfaction or settlement of the claim. Thus, the insurer had no way of ascertaining the amount to pay. The uninsured motorist independently denied liability and the

insurer refused to pay under the insured's uninsured motorist coverage pending a determination of the uninsured driver's fault. The insured then successfully sued the uninsured driver and the insurer immediately tendered the amount of the judgment. This Court reversed the trial court's allowance of attorney fees for the attorney's work on the suit against the uninsured motorist. The essence of the Court's reasoning was that no amount was "justly due" from the insurer until facts substantially indicative of the uninsured motorist's liability are shown the insurer or, in the absence of such facts, until the uninsured motorist's liability is admitted or judicially declared. In effect, the Court held that a prerequisite to coverage under the policy was proof of the amount of the uninsured motorist's liability, if any. In so holding, the Court carefully distinguished the facts in Halliday, *supra*, and restricted the *Halliday* holding to the facts found therein. The Court stated at page 140 of 92 Idaho, at page 570 of 438 P.2d:

> "In *Halliday*, an insured brought a direct action against his insurer on a policy provision almost identical to that of present concern. In the name of and on behalf of the insurer, an answer was filed denying that the other driver had been uninsured, had been negligent or that, if any, his negligence proximately had caused damages to the insured. The insurer also pleaded contributory negligence by the insured and unavoidable accident. The case went to trial, the only parties still being the insured, as plaintiff, and the insurer, as defendant. After the insured rested his case, the insurer abandoned all the stated defenses; left for the jury's determination was only the amount of damages. The district court awarded attorney's fees to the insured under I.C. § 41–1839, and this Court affirmed.

> "*Halliday* must be limited to its facts. On close reading, those facts are quite different from the facts of the present action. *For the insured's action in Halliday was directly against the insurer, a*

*sole defendant, and the company in effect chose to defend the uninsured motorist."* (Emphasis supplied).

Further, the Court said with regard to claims against insurance companies in general under I.C. § 41–1839:

> "In absence of statute expressly and precisely compelling an opposite result, the general rule is that an insurer's refusal to pay a claim under its policy must be unreasonable before a court may award attorney's fees as part of the recovery in a subsequent action by the claimant." 92 Idaho at 139, 438 P.2d at 569.

Since *Carter* three other cases have dealt with this problem. In Stephens v. New Hampshire Insurance Co., 92 Idaho 537, 447 P.2d 14 (1968), decided subsequent to *Carter,* the issue involved was wind damage to a potato cellar where the insurer denied that the insured's loss was due to "wind" but was caused by a structural deficiency. This Court allowed attorney fees for the lower court action and also awarded attorney fees on appeal without discussing the language set forth in *Carter*. Following *Stephens* the Court decided the case of United States Fidelity and Guaranty Co. v. Clover Creek Cattle Co., 92 Idaho 889, 452 P.2d 993 (1969), wherein, at least inferentially, *Carter* was recognized and a "preponderately reasonable" test was used to determine if an insurer's rejection of a claim was just or unjust. In Dawson v. Olson, 94 Idaho 636, 496 P.2d 97 (1972), this Court set forth the holding of *Carter* as applying to uninsured motorist insurance cases as follows:

> "In *Carter* this Court established two rules: (1) In general, no amount is 'justly due' from the insurer until facts substantially indicative of the uninsured motorist's liability are shown the insurer, or, in the absence of such facts, until the uninsured motorist's liability is admitted or judicially declared. (2) Where the insurer is sued for attorney fees incurred in a *separate* successful action against the uninsured motorist, the insurer is obligated to pay the attorney fees only if

its initial refusal to pay the claim were unreasonable." 94 Idaho at 641, 496 P. 2d at 102.

In view of the varied decisions in the foregoing cases construing § 41–1839, and the conflicting language used therein, we have carefully reconsidered the statute in question and the authorities and reasoning in both *Halliday* and *Carter*. While the result reached in the *Carter* decision was correct in view of the fact that the proof of claim filed with the insurer did not mention a specific sum and therefore no tender could be made, the language employed and the rule announced in *Carter* engrafts upon the statute a requirement which we now feel is unwarranted. Therefore, to that extent, Carter v. Cascade Insurance Co., 92 Idaho 136, 438 P.2d 566 (1968), is overruled.

We therefore hold that under I.C. § 41–1839, any person who has a claim under a policy of insurance and who furnishes proof of loss as provided in the statute may recover attorney fees against the insurer if the amount ultimately recovered in the action exceeds the amount tendered by the insurer before the commencement of the action.

The allowance of attorney fees in this case is affirmed. Costs, if any on rehearing, to appellant.

SHEPARD, C. J., and DONALDSON and McQUADE, JJ., concur.

McFADDEN, J., dissents.