667 F.2d 1289
 CONTINENTAL RE-INSURANCE COMPANY, a California corporation,
formerly doing business as Pacific Insurance
Company, a California corporation,
Plaintiff-Appellant/Cross-Appellee,
v.
Vernon SPANTON and Betty Spanton, husband and wife,
Defendants-Appellees/Cross-Appellants.
 Nos. 80-3362, 80-3379.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1981.
Decided Feb. 16, 1982.
 
 1
 John Howard, Quane, Smith, Howard & Hull, Boise, Idaho, for Continental Re-Insurance Co.
 
 
 2
 Gary G. Jones, Rhoten, Rhoten & Speerstra, Salem, Or., for Vern spanton.
 
 
 3
 Appeal from the United States District Court for the District of Idaho.
 
 
 4
 Before GOODWIN and FLETCHER, Circuit Judges, and PANNER,* District Judge.
 
 PANNER, District Judge:
 OVERVIEW
 
 5
 Appellant Continental brought this action for declaratory judgment seeking a ruling that the Spantons breached the terms of the insurance policy issued to them by Continental, thereby excusing the insurer from performing under the insurance contract. The district court found no breach of the insurance contract by the Spantons. It further held that the dilatory tactics of Continental were so reprehensible as to justify an award of punitive damages to the Spantons.
 
 
 6
 The Spantons cross-appeal, arguing that the district court's valuation of the property in question is too low.
 
 FACTS
 
 7
 On October 21, 1978 the Spantons signed an Earnest Money Agreement selling their home to Frank and Melba Martarano. The Martaranos paid $1,000 as earnest money and were to take possession on December 1, 1978. They obtained a fire insurance policy on the home in the amount of $26,000 with Canyon County Farmers Mutual Fire Insurance Co. (Canyon). The Spantons still had a fire insurance policy in the amount of $42,000 with Continental. On December 5, 1978 the home was destroyed by fire.
 
 
 8
 Within a couple of days after the fire, the Spantons notified Continental of the loss. Ron Blakely, representing Continental inspected the premises December 7, 1978. After viewing the property, he determined that the actual cash value of the property was $25,207. On December 14, 1978 he learned of Canyon's coverage and advised the Spantons' attorney that Continental would not settle the Spantons' claim. In his opinion, the existence of the earnest money agreement made it unclear whether title rested in the Spantons or the Martaranos. He told the Spantons' attorney that Continental would not make any settlement until title was quieted in the Spantons.
 
 
 9
 On January 23, 1979 the Spantons submitted proof of loss to Continental claiming $42,000, the maximum amount for which Continental had insured the property. In a letter dated February 27, 1979, Dean L. Hendrickson, Claims Manager for Continental, informed the Spantons' attorney that Continental was rejecting the proof of loss for two reasons: (1) Continental disputed the fair market value of the house; and (2) given the dispute between the Spantons and the Martaranos concerning the purchase of the property, Continental claimed that it had no basis for making an adjustment until "the quiet title dispute is resolved."
 
 
 10
 In order to clear the title, the Spantons and the Martaranos both signed a mutual release of their respective obligations under the earnest money agreement. Continental still refused to negotiate a settlement and contends in this proceeding that the mutual release signed by the Spantons destroyed whatever rights of subrogation Continental might have had against the Martaranos or their insurer. Continental argues that the execution of the release was a material breach of the Spantons' obligations under the policy.
 
 DISCUSSION
 A. Subrogation
 
 11
 Continental argues that, in the absence of the release, it would have been subrogated to the rights of the Spantons as sellers in the earnest money agreement and could have enforced the agreement against the Martaranos to the extent of the loss it paid to the Spantons. A subrogee, however, is entitled only to those rights available to the subrogor. May Trucking Co. v. International Harvester Co., 97 Idaho 319, 543 P.2d 1159, 1162 (1975); see Smith v. City of Preston, 99 Idaho 618, 586 P.2d 1062, 1066 (1978). Under the terms of the earnest money agreement, the Martaranos could have voided the agreement any time after the fire. After the fire, there was nothing to which Continental could have been subrogated since at that point the earnest money agreement was unenforceable at the option of the buyer.
 
 
 12
 Even assuming that Continental succeeded to some enforceable right of the Spantons under the earnest money agreement, Continental took no action to create the subrogation. An insurer has no right of subrogation until it pays the claim of the insured. Houghtelin v. Diehl, 47 Idaho 636, 277 P. 699, 700-01 (1929). Continental never made any attempt to settle the Spantons' claim or obtain their assignment of the agreement. Rather Continental demanded the title be quieted as a condition of payment. The Spantons complied with that demand.
 
 B. Attorney's Fees
 I.C. 41-1839(1) provides as follows:
 
 13
 Any insurer issuing any policy, ..., which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, ... to pay to the person entitled thereto the amount justly due under such policy, ... shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, ... pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.
 
 
 14
 The Idaho Supreme Court has held that under this statute any person who has a claim under a policy of insurance and who furnishes proof of loss as provided in the statute may recover attorney's fees against the insurer if the amount ultimately recovered in the action exceeds the amount tendered by the insurer prior to the commencement of the action. Associates Discount Corp. of Idaho v. Yosemite Ins. Co., 96 Idaho 249, 526 P.2d 854, 860-62 (1974).
 
 
 15
 Continental made no tender prior to the filing of the complaint. The Spantons are entitled to attorney's fees. Appellants have not disputed the amount.
 
 C. Proration
 
 16
 Continental contends that the prorata provisions in its policy have been established and should be enforced. The problem with this argument is that Canyon County Farmer's Mutual Fire Insurance Company was not a party to these proceedings and its responsibility, if any, cannot be determined.
 
 D. Punitive Damages
 
 17
 The district court awarded punitive damages based on Continental's unreasonable refusal to settle the Spantons' claim. Continental first rejected the proof of loss because of a perceived title dispute, encouraged the Spantons to quiet title and, when they did so, claimed that the Spantons had violated the provisions of the policy.
 
 
 18
 To be entitled to an award of punitive damages, the plaintiff must show:
 
 
 19
 ... that the company's refusal promptly to pay the claim was an extreme deviation from reasonable standards of conduct, performed with an understanding of its consequences.
 
 
 20
 Linscott v. Rainier National Life Ins. Co., 100 Idaho 854, 606 P.2d 958, 964 (1980) (footnote omitted).
 
 
 21
 More recently, while reiterating its reluctance to permit punitive damages, the Idaho Court has approved the "extreme deviation" standard. Massey-Ferguson Credit Corp. v. Peterson, 102 Idaho 111, 626 P.2d 767, 773 (1981).
 
 
 22
 The district court properly concluded that the conduct of Continental was an extreme deviation from reasonable standards and was performed by the defendant with an understanding of or a disregard of its consequences. The gross disparity in bargaining power between the parties combined with the ability to unduly delay payment through litigation and appeal justifies the award of punitive damages as a sanction and deterrent to such oppressive conduct.
 
 E. Cross-Appeal
 
 23
 The Spantons appeal from the district court's valuation of the property at $30,840. The court accepted the testimony of the two insurance adjusters and placed the value at $20 per square foot. The trial court was not clearly erroneous.
 
 
 24
 We AFFIRM.
 
 
 
 *
 Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation